# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARITY SPORTS INTERNATIONAL LLC and JASON BERNSTEIN, | )<br>)<br>)<br>) |
| Plaintiffs, | )  Case No.<br>) |
| v. | )<br>) |
| REDLAND SPORTS and GERRY OCHS, | )<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT

Plaintiffs, Clarity Sports International LLC and Jason Bernstein, (collectively, "Plaintiffs"), by and through undersigned counsel, bring this Complaint against Defendants Redland Sports and Gerry Ochs, (collectively, "Defendants"), and aver in support thereof as follows:

## THE PARTIES

1. Plaintiff Clarity Sports International LLC is a limited liability company organized and existing under the laws of the State of Maryland. Its principal place of business is located at 9412 Crimson Leaf Terrace, Potomac, Maryland 20854.

2. Plaintiff Jason Bernstein is the majority owner of Clarity Sports International LLC and is a citizen of the State of Maryland.

3. Upon information and belief, Defendant Redland Sports does business in the Commonwealth of Pennsylvania, with its principal place of business located at 221 North Duke Street, York, York County, Pennsylvania, 17401.

4. Upon information and belief, Defendant Gerry Ochs ("Ochs") is the owner of Redland Sports. Upon information and belief, Ochs is an adult citizen of the Commonwealth of Pennsylvania with a residence address of 562 Magaro Rd., Enola, Dauphin County Pennsylvania, 17025.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendants as they are residents of this Commonwealth and/or have caused harm or tortious injury in this Commonwealth by their acts or omissions.

7. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because both defendants are residents of the Commonwealth of Pennsylvania, the state in which this District is located. Venue is also proper because a substantial part of the events or omissions set forth herein occurred in this District.

## RELEVANT FACTUAL BACKGROUND

8.  Plaintiff Jason Bernstein is, and was at all times relevant to this action, a National Football League Players' Association ("NFLPA") certified contract advisor. Bernstein represents several players in the National Football League ("NFL") as their agent.

9.  Mr. Bernstein is the majority owner of Clarity Sports International LLC ("Clarity"), a full-service sports management company with a focus on providing management and advisory services to professional athletes.

10. Clarity represents NFL players in their contractual negotiations and dealings with the NFL, and in other matters to which the parties agree, including the representation of players in those players' marketing and endorsement contract negotiations.

11. One of those players that Mr. Bernstein represented was Kenny Golladay ("Golladay"), an NFL player currently under contract with the Detroit Lions.

12. Upon information and belief, Ochs is the owner of Redland Sports, a sports memorabilia company.

13. Redland Sports is in the business of procuring and selling autographed sports memorabilia.

14. As a part of its business, Redland Sports, through its owner Ochs, arranges autograph signings with NFL players and then markets and sells the items signed by those NFL players.

15. Redland Sports advertises and markets sports memorabilia signed by NFL players on its Facebook page.

16. Upon information and belief, in order to facilitate these autograph signings by NFL players, Defendants contract with those players to pay them for their appearances and autographs, typically on a per-autograph or per-appearance basis.

17. Upon information and belief, Redland Sports typically negotiates the contracts for NFL players' autograph signings with those NFL players' agents.

18. Further, Defendants are and were aware that in the NFL, NFLPA registered agents are often in exclusive marketing arrangements with their player-clients.

## PLAINTIFFS' CONTRACTS WITH GOLLADAY

### The Standard Representation Agreement

19. On December 23, 2016 Mr. Bernstein and Golladay executed an NFLPA "Standard Representation Agreement" ("SRA"), under which Mr. Bernstein agreed to "represent, advise, counsel, and assist" Golladay in the negotiation and execution of Golladay's playing contracts in the NFL.

20. Under the SRA, Mr. Bernstein was the "exclusive representative" of Golladay for the purpose of negotiating playing contracts for Golladay.

21. In return, Golladay agreed to pay Mr. Bernstein three percent of the compensation Golladay earned under the playing contracts Mr. Bernstein negotiated for him.

22. An SRA is a standard-form contract between NFL players and their agent-representatives; virtually all NFL players are represented by agent-representatives pursuant to an NFLPA Standard Representation Agreement.

## The Endorsement and Marketing Agreement

23. On December 23, 2016, in addition to entering into the SRA, Clarity and Golladay also entered into an "Endorsement and Marketing Agreement."

24. Mr. Bernstein signed the Endorsement and Marketing Agreement on behalf of Clarity.

25. Under the Endorsement and Marketing Agreement, Clarity agreed to "procure, negotiate, and manage 'Endorsement Opportunities'" for Golladay.

26. "Endorsement Opportunities" included contracts for the endorsement of commercial products and services, paid personal appearances, and other opportunities related to the commercial exploitation of Golladay's status as an NFL player, including but not limited to autograph-signing appearances.

27. In consideration of Clarity's services under the Endorsement and Marketing Agreement, Golladay agreed to pay Clarity fifteen percent of the endorsement monies he earned.

28. The Endorsement and Marketing Agreement "create[d] an exclusive arrangement" between Clarity and Golladay with respect to opportunities such as autograph signings and other paid appearances available to Golladay.

29. In other words, as under the SRA, Mr. Bernstein and Clarity were Golladay's exclusive representatives in the endorsement and marketing arena.

30. Under the Endorsement and Marketing Agreement, Clarity contracted for, arranged, and helped execute multiple autograph signings and similar appearances for Golladay.

## REDLAND SPORTS AND GERRY OCHS INTERFERE

### Defendants' Interference with the Endorsement and Marketing Agreement

31. Redland Sports announced on January 2, 2019 that it would host a private autograph signing with Golladay on January 21, 2019. *See* Redland Sports' Facebook Post, attached hereto as Exhibit A.

32. Plaintiffs did not arrange for Golladay's appearance at this event, nor were Plaintiffs aware of the then-upcoming signing until Redland Sports announced it on its Facebook page.

33. In fact, Plaintiffs at that time were in the process of negotiating for Golladay a contract for a different signing, pursuant to the terms of their exclusive Endorsement and Marketing Agreement.

34. After eventually being alerted to Redland Sports' January 2, 2019 Facebook post about the then-upcoming Golladay signing, Mr. Bernstein sent an email to Ochs on January 7, 2019 to inform him that Clarity had an exclusive marketing agreement in place with Golladay. *See* Email from Jason Bernstein to Gerry Ochs, attached hereto as Exhibit B.

35. Mr. Bernstein informed Ochs in pertinent part that "we [Clarity] have an exclusive marketing agreement in place with Kenny [Golladay], which includes handling all signings." Ex. B.

36. Also on January 7, 2019, Mr. Bernstein sent a text message to Ochs informing him of the same. *See* Text Message from Jason Bernstein to Gerry Ochs, attached hereto as Exhibit C.

37. In both Mr. Bernstein's January 7, 2019 email and text message to Ochs, he asked Ochs to remove the Facebook post advertising the January 21, 2019 signing. In addition, Mr. Bernstein asked that Ochs contact him by telephone. *See* Exs. B, C.

38. Ochs ignored Mr. Bernstein's contacts and requests directed to him, and did not call Mr. Bernstein back.

39. Thus, Defendants ignored Plaintiffs' exclusive arrangement with Golladay and did not negotiate the contract for Golladay's appearance with Plaintiffs.

40. Instead, Defendants worked with Todd France ("France"), a different NFLPA registered agent, on the contract for Golladay to appear at the January 21, 2019 signing. In addition to France, Defendants worked with other representatives from and employees of France's employer, CAA Sports LLC ("CAA Sports"). CAA Sports is an affiliate of Creative Artists' Agency ("CAA"), an international talent agency headquartered in Los Angeles, California.

41. Under that arrangement, which Defendants negotiated with France and CAA Sports, Golladay was paid to appear and was paid for a number of his autographs signed at the January 21, 2019 appearance.

42. On January 24, 2019, Redland Sports advertised a number of sports memorabilia items, all signed by Golladay, on its Facebook page. *See* Redland Sports January 24, 2019 Facebook Post, attached hereto as Exhibit D.

43. Defendants worked and negotiated with France and/or others at CAA Sports to arrange the signing, despite Defendants' full knowledge and awareness that France was not Golladay's NFLPA certified contract advisor or marketing agent.

44. Defendants have negotiated numerous autograph signing and appearance deals for NFL player-clients of France and CAA Sports in the past, including for NFL players such as Alec Ogletree and Aaron Donald.

45. In this instance, however, Defendants were aware that Golladay was not in fact represented by France and CAA Sports, either under a Standard Representation Agreement or a marketing agreement.

46. Upon information and belief, Defendants were also aware that France desired to represent Golladay, and that through negotiating a contract for Golladay's appearance, France hoped to persuade Golladay to terminate his relationship with Plaintiffs and become France's client.

47. Further, Defendants were aware that Golladay in fact had an exclusive marketing agreement with Plaintiffs. *See* Exs. B, C.

48. Despite this knowledge of the Endorsement and Marketing Agreement between Plaintiffs and Golladay, Defendants negotiated the contract for Golladay's January 21, 2019 appearance with France and CAA Sports.

**Defendants' Interference with the SRA**

49. In addition to Defendants' knowledge of Plaintiffs' exclusive Endorsement and Marketing Agreement with Golladay, Defendants were also aware of Plaintiffs' SRA with Golladay.

9

50. Further, upon information and belief, Defendants were aware that France desired to represent and enter into a Standard Representation Agreement with Golladay.

51. Defendants, through their negotiations with France and knowledge of his desire to represent Golladay, purposefully interfered with the SRA.

52. After Golladay's January 21, 2019 appearance and signing, which Defendants negotiated with France and CAA Sports, Golladay terminated the SRA with Plaintiffs on January 24, 2019. *See* Email from Golladay to Jason Bernstein, attached hereto as Exhibit E.

### COUNT I – TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONSHIPS (ENDORSEMENT AND MARKETING AGREEMENT)

53. Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

54. Plaintiffs had a valid contract with Golladay based on the December 23, 2016 Endorsement and Marketing Agreement.

55. The Endorsement and Marketing Agreement was formed for the benefit of Plaintiffs.

56. The purposeful actions of Defendants Redland Sports and Ochs, including but not limited to negotiating, contracting and arranging for, promoting,

and carrying out the memorabilia signing on January 21, 2019, interfered with performance of the Endorsement and Marketing Contract.

57. Defendants Redland Sports and Ochs were not privileged or justified in their actions.

58. As a result of Defendants' interference, Plaintiffs sustained and will sustain in the future pecuniary losses in excess of $75,000, representing their lost fees under the Endorsement and Marketing Agreement.

### COUNT II – TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONSHIPS (STANDARD REPRESENTATION AGREEMENT)

59. Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

60. Plaintiffs had a valid contract with Golladay based on the December 23, 2016 Standard Representation Agreement.

61. The Standard Representation agreement was formed for the benefit of Plaintiffs.

62. The purposeful actions of Defendants Redland Sports and Ochs, including but not limited to negotiating, contracting and arranging for, promoting, and carrying out the memorabilia signing on January 21, 2019, interfered with performance of the Standard Representation Agreement.

11

63. Defendants Redland Sports and Ochs were not privileged or justified in their actions.

64. As a result of Defendants' interference, Plaintiffs sustained and will sustain in the future pecuniary losses in excess of $75,000, representing their lost fees under the SRA.

**WHEREFORE,** Plaintiffs Clarity Sports International LLC and Jason Bernstein respectfully request that judgment be entered in their favor and against the Defendants, individually and jointly, as follows:

(a) For damages in an amount to be determined at trial; and

(b) For such other and further relief as this Court deems just and proper.

Dated: February __, 2019          Respectfully submitted,

BUZGON DAVIS LAW OFFICES

/s/ *Scott L. Grenoble*
Scott L. Grenoble
Attorney I.D. #72808
525 South Eighth Street
Post Office Box 49
Lebanon, PA   17042-0049
(717) 274-1421
Fax: (717) 274-1752
E-mail: sgrenoble@buzgondavis.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2019 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.

*/s/ Scott L. Grenoble*