## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARITY SPORTS INTERNATIONAL LLC and JASON BERNSTEIN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-00305-YK |
| CAA SPORTS, LLC, REDLAND SPORTS, GERRY OCHS, MVP AUTHENTICS, LLC, DARYL EISENHOUR, JASON SMITH, BOONE ENTERPRISES INC. d/b/a BOONE ENTERPRISES AUTHENTIC AUTOGRAPHS, and CRAIG BOONE, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANTS CAA SPORTS, LLC, BOONE ENTERPRISES, <u>CRAIG BOONE, REDLAND SPORTS AND GERRY OCHS</u>

# TABLE OF CONTENTS

PAGE

Table of Authorities ............................................................................... iii

Introduction ............................................................................................1

Statement of Procedural History of the Case and Statement of Facts ......................5

Statement of Questions Involved ...................................................................5

Legal Standard .......................................................................................5

Argument...............................................................................................7

I.    CAA's Answer Should be Stricken .................................................................7

    A.    CAA Failed to Produce Highly Relevant Evidence and Then Hid Other Key Evidence Under a Redaction ........................................7

        1.    CAA's Non-Production Fraud ....................................................7

        2.    CAA Intentionally Hid Evidence under a Redaction. .............10

    B.    CAA's Failure to Produce One of Two Email Attachments..............12

        1.    "The extent of the party's personal responsibility" .................18

        2.    "The prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery" .................18

        3.    "A history of dilatoriness" ........................................................19

        4.    "Whether the conduct of the party or the attorney was willful or in bad faith"...............................................................20

        5.    "The effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions"...................20

        6.    "The meritoriousness of the claim or defense"........................21

II.     The Boone Defendants' Answer Should Be Stricken ..................................21

III.    The Court Should Give an Adverse Inference Instruction Against
        Redland and Ochs ........................................................................................25

        A.     Redland/Ochs Had a Duty to Preserve Discoverable Evidence..........25

        B.     The Court Should Give an Adverse Inference Instruction.................27

IV.     Plaintiffs Also Seek Their Costs and Attorneys' Fees Caused by
        Defendants' Discovery Abuses ....................................................................29

Conclusion ................................................................................................................30

# TABLE OF AUTHORITIES

PAGE

## Cases

*Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund*,
29 F.3d 863 (3d Cir.1994) ............................................................... 18, 19, 20

*Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524 (3rd Cir.
2007) .........................................................................................................6

*Briscoe v. Klaus,* 538 F.3d 252 (3d Cir. 2008) ......................................... 17, 19, 20

*Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568 (3d Cir. 2018)................ 6, 17, 27

*Culler v. Shinseki*, 2011 WL 3795009 (M.D. Pa. Aug. 26, 2011).................... 26, 27

*Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683
(3d Cir. 1988)..........................................................................................18

*Dunn v. Mercedes Benz of Ft. Washington, Inc.*, 2012 WL 424984
(E.D. Pa. Feb. 10, 2012) ...........................................................................26

*GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76 (3rd Cir. 2019) ........................7

*Int'l Fin. Co., LLC v. Jabali-Jeter*, 2019 WL 2268961 (E.D. Pa. May
28, 2019) .................................................................................................29

*Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311 (Fed. Cir. 2011)......................26

*Mindek v. Rigatti*, 964 F.2d 1369 (3d Cir. 1992)........................................17

*Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd.*, 348 F.Supp.2d 332
(D.N.J.2004) ....................................................................................... 26, 27

*Ogin v. Ahmed*, 563 F.Supp.2d. 539 (M.D.Pa. 2008)................................ 26, 27, 28

*Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir.1984) ... 17, 20, 21

*Schmid v. Milwaukee Electric*, 13 F.3d 76 (3d Cir. 1994)........................................28

*Simpson v. Pa. Bd. Prob./Parole*, 2022 WL 821174 (M.D. Pa. Mar. 17, 2022) ..................................................................................17

*TelQuest Int'l Corp. v. Dedicated Bus. Sys., Inc.*, 2009 WL 690996 (D.N.J. Mar. 11, 2009)............................................................ 26, 27

*Ware v. Rodale Press, Inc.*, 322 F.3d 218 (3d Cir. 2003).......................... 17, 18, 19

*Winters v. Textron*, Inc., 187 F.R.D. 518 (M.D. Pa. 1999)......................................16

**Rules**

Fed. R. Civ. P. 26(e) .................................................................................29

Fed. R. Civ. P. 37 .......................................................................... 5, 6, 16

Fed. R. Civ. P. 37(b)(2)(A) ..........................................................................6

Fed. R. Civ. P. 37(b)(2)(A)(i)–(iii), (vi) ...................................................6

Fed. R. Civ. P. 37(b)(3).............................................................................29

Fed. R. Civ. P. 37(c)(1)(A) .......................................................................29

Fed. R. Civ. P. 37(e)............................................................................ 6, 27

# INTRODUCTION

Plaintiffs Clarity Sports International LLC and Jason Bernstein (collectively "Plaintiffs") respectfully move this Court for an order sanctioning Defendants CAA Sports, LLC, Boone Enterprises, Craig Boone, Redland Sports and Gerry Ochs based on their improper withholding of evidence and destruction of evidence in this case. Plaintiffs seek sanctions against these defendants for four different discovery abuses, all of which are blatant and highly prejudicial.

First, Defendant CAA Sports LLC ("CAA") refused to produce a highly relevant expense report concerning then-CAA employee Todd France's flight to be in Chicago on the day of Kenny Golladay's January 21, 2019 memorabilia signing ("Signing"). The expense report is strong evidence of France's involvement with the Signing and CAA repeatedly tried to cover it up. The document was produced only on Plaintiffs' motion to compel and after the Court ordered CAA to produce it. However, when CAA finally produced this document, it hid highly relevant and damaging information under a redaction on the document. The information under the redaction *finally* came to light when CAA was ordered *for a second time* to produce the information. CAA knew the redacted information was responsive to Plaintiffs' discovery requests and that Plaintiffs were seeking it specifically. But CAA withheld it, then redacted it, in an egregious abuse of the discovery process. Had Plaintiffs not *twice* raised the issue with the Court, and instead relied on CAA's

representations, Plaintiffs would have been deprived of this critical information. This is a blatant and impermissible abuse of the discovery process that cannot be allowed to go unaddressed.

Second, CAA was ordered to produce a January 8, 2019 email from France to Golladay in which France sent Golladay the contract for the Signing event. When it produced this email in PDF format, however, CAA failed to include one of the two attachments to the email. CAA produced the email's attachment that was the draft Signing contract. The attachment that was withheld by CAA, however, was a text file containing France's signature block and stating, "sent from iPhone." Plaintiffs only obtained this attachment when they successfully moved to compel CAA to produce the "native" version of France's email to Golladay. The withheld attachment shows France and his subordinate, Jake Silver, were untruthful about France's knowledge of the Signing, because Silver testified that he (not France) impersonated France and sent this email to Golladay from France's office computer. There was no legitimate basis for CAA to withhold this critical attachment which shows the email was actually sent from France's iPhone. Had Plaintiffs not successfully filed a motion to compel the production of the native version of the email, Plaintiffs would never have known of this critical evidence. The email itself is a smoking gun, and

the withheld attachment destroys CAA's farfetched claim that Silver (not France) actually sent the email from France's computer to Golladay. This is sanctionable.[1]

Third, Defendant Craig Boone provided false interrogatory responses in March, 2020 an attempt to hide CAA's involvement in the Signing from Plaintiffs. Boone, who is represented by CAA's attorneys, blatantly omitted CAA's involvement in the Signing from his interrogatory responses in order to keep CAA's true involvement from coming to light. The truth was omitted because at that time, the NFLPA arbitrator had not yet issued his ruling in Bernstein's grievance against France. It only after the arbitrator issued his ruling later that month that Boone then *changed* his interrogatory responses and finally admitted CAA did set up the Signing after all. This was blatant fraud orchestrated by the attorneys who share Boone, France and CAA as their clients, and it was designed to keep those facts from being used in the NFLPA arbitration until after arbitrator issued his decision. Only then, when it was too late for Bernstein to ask the arbitrator to consider the evidence, did Boone finally admit CAA's involvement.

Fourth, Defendant Gerry Ochs testified that his smart phone, which contained text messages with Boone about the Signing, "melted" in late June or early July of

---

[1] Both of these first instances were designed to hide France's involvement in these events. As the Court well knows, CAA's lawyers represent France in the NFLPA arbitration proceedings between Bernstein and France, where France's falsely denied any involvement in the Signing.

2019, a full four months after this case was filed and well after Plaintiffs had served Ochs with discovery requests calling for the production of such messages. Ochs and his company, Defendant Redland Sports, made no effort to preserve that discoverable information, and, for that reason, Plaintiffs were never able to obtain it. Ochs should be sanctioned for failing to preserve and produce this responsive information.

As detailed herein, Defendants' discovery abuses have wasted a great deal of Plaintiffs' and the Court's time and resources. Moreover, the withholding of this information in early 2020 (when it should have been produced) deprived Plaintiff Jason Bernstein of the ability to present that evidence to the NFLPA arbitrator in his grievance against Todd France, *before* the arbitrator issued his decision. This was highly prejudicial to Bernstein and was an orchestrated maneuver by the attorneys who represent France, CAA and Boone.

The conduct detailed herein demonstrates a pattern of egregious discovery abuse. It shows a bad faith, a concerted effort to hide the ball from Plaintiffs, a concerted effort to keep evidence that should have been produced in this case from ending up before the NFLPA arbitrator, and an utter disregard for the rules of discovery. Plaintiffs' Motion should be granted.

## STATEMENT OF PROCEDURAL
## HISTORY OF THE CASE AND STATEMENT OF FACTS

The Court is familiar with the procedural history of this case. For purposes of this Motion, the relevant facts – including a description of each of the relevant Defendants' sanctionable conduct – are detailed in the Argument section, below.

## STATEMENT OF QUESTIONS INVOLVED

1. Should CAA's Answer be stricken for CAA's egregious discovery abuses, including failure to produce key evidence, wrongful withholding of an email attachment to an email, and hiding of key evidence under a redaction? (Suggested answer: Yes)

2. Should the Boone Defendants' Answer be stricken for their untruthful interrogatory responses? (Suggested answer: Yes)

3. Should the Court give an adverse inference instruction to the jury regarding the Redland Defendants' failure to preserve evidence? (Suggested answer: Yes)

4. Should the Court award Plaintiffs monetary sanctions associated with Plaintiffs' attorneys' fees and costs in bringing this motion and caused by the sanctionable conduct? (Suggested answer: Yes)

## LEGAL STANDARD

Rule 37 states, in part, that "[i]f a party…fails to obey an order to provide or permit discovery ..., the court where the action is pending may issue further just

orders" sanctioning the offending party. Fed. R. Civ. P. 37(b)(2)(A). The potential sanctions endorsed by the Rule include, among others, "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; ... prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;" "striking pleadings in whole or in part;" and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i)–(iii), (vi); *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 577 (3d Cir. 2018).

Also relevant here, Rule 37(e) provides, in part, that courts may impose an adverse inference, dismiss the action, or enter a default judgment "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, ... it cannot be restored or replaced through additional discovery," and the court "find[s] that the party acted with the intent to deprive another party of the information's use in the litigation." *Clientron Corp.*, 894 F.3d at 577 n.5.

"The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." *Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 538 (3rd Cir. 2007). In deciding Rule 37 sanctions, district courts consider

(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3rd Cir. 2019).

## ARGUMENT

## I.   CAA's Answer Should be Stricken.

CAA failed to produce key documents during discovery and then, after being ordered to produce them, redacted highly damaging information and again attempted to hide it from Plaintiffs. Separately, CAA inexplicably failed to produce a smoking gun attachment to an email it produced. CAA's Answer should be stricken.

### A.   CAA Failed to Produce Highly Relevant Evidence and Then Hid Other Key Evidence Under a Redaction.

#### 1.   CAA's Non-Production Fraud

As the Court knows, CAA and its then-employees Jake Silver and Todd France have steadfastly denied that France was involved with, or even knew about, the Signing. But Plaintiffs obtained France's flight records from Delta Air Lines which show France had a flight reservation to be in Chicago, Illinois—the location of the Signing—on January 21, 2019 (the date of the Signing). Doc. 284-2. The Delta flight record shows France flew to Chicago two days later, at the time Golladay was terminating Plaintiff Jason Bernstein as his agent. *Id.* Plaintiffs sought documents

from CAA about these flights in Plaintiffs' Second Set of Requests for Production it served on CAA on March 11, 2021. Plaintiffs' RFP 1 sought "each and every document or communication relating to Todd France's flight reservation(s) to Chicago, Illinois in January 2019, including but not limited to any reimbursement requests or communication about making such reservation." Doc. 285 at 2.

CAA produced no responsive documents. Instead, on April 12, 2021, CAA served objections and filed a motion for protective order. Docs. 228, 229. On April 13, 2021, the Court entered an Order striking CAA's motion for protective order and removing it from the docket, and directing counsel for CAA to "confer on the telephone or via Zoom, or other video conference platform, with the plaintiffs' counsel regarding the issues it sought to raise in the stricken motion and attempt to civilly resolve these issues[.]" Doc. 230. After the parties' meet and confer call and more delay by CAA, Plaintiffs sought CAA's concurrence in a motion to compel. *See* Doc. 243-1. Only then did CAA finally serve responses. *See* Docs. 243-3, 243-4. In response to RFP 1, CAA stated that, "after reasonable investigation, CAA has located no such documents in its possession custody, or control," and referred Plaintiffs to the Delta records. Doc. 243-3 at 4. This representation was not true.

On June 10, 2021, because of CAA's deficient responses, Plaintiffs filed a Motion to Compel. Docs. 242, 243. CAA's response to that Motion stated it "could locate no [] documents" responsive to RFP 1. Doc. 244 at 18. CAA claimed it had

fully responded to RFP 1 and there was "nothing to compel." *Id.* at 19. CAA also stated that France regularly travels to Chicago to visit family, *id.* at 19 n. 11, a statement designed to create the false impression that any of his trips to Chicago had nothing to do with Golladay. This statement likewise turned out to be entirely untrue.

On January 6, 2022, the Court entered an Order directing Plaintiffs to inform the Court about the outstanding issues in Plaintiffs' Motion to Compel. Doc. 280. On January 20, 2022, Plaintiffs informed the Court that one of the outstanding issues was RFP 1—and specifically that CAA still had produced no responsive documents. Doc. 282 at 1. On January 26, 2022, the Court entered an Order directing the parties to meet and confer again on the outstanding issues, and to file a joint letter advising on the status of those remaining issues. Doc. 283. The parties filed that joint letter on February 15, 2022. Doc. 284.

On February 14, 2022, the day before the parties' joint letter was due, CAA sent Plaintiffs a letter (Doc. 284-5) and produced three documents. In its letter, CAA's attorney wrote that CAA had suddenly located "a handful" of additional documents. Doc. 284-5 at 3. The documents included France's expense report with CAA from January 2019, which was heavily redacted. Ex. 1 (filed under seal) (the "Expense Report"). The only unredacted portions of the Expense Report were several entries relating to France's trip to Chicago two days after the Signing, all of which show the trip was specifically to meet with Golladay. Golladay is described

as France's "*Prospective* Client" and "*recruit*." *Id.* at CAA-1208-09 (emphasis added). The document undercuts essentially *all* of CAA, France, and Silver's testimony about France's involvement with Golladay, in which they claimed Golladay was *not* a "prospective" client or "recruit" because he had already made up his mind to sign with CAA and France prior to the Signing. CAA was desperate to hide this information even after telling the Court it did not exist. *See* Doc. 244 at 18-19. The document also directly contradicts CAA's attorneys' suggestion to Plaintiffs and to the Court that France had been in Chicago as part of a regular family visit. Doc. 244 at 19 n. 11.

There is no excuse for CAA's decision to withhold the documents it finally produced on February 14, 2022 that prove France met with Golladay in Chicago on January 23, 2019. The delay matters, as France claimed in his deposition (prior to CAA's eventual production) that he did not see Golladay in Chicago on January 23, 2019. Plaintiffs were deprived of the opportunity to question France with records proving otherwise.

### 2.   CAA Intentionally Hid Evidence under a Redaction.

As to the other flight, the one that France had booked to be in Chicago on the day of the Signing but did not end up flying (the "Untaken Flight")—CAA's February 14 letter stated that CAA had "located no documents pertaining" to such flight. CAA assured Plaintiffs "there would be no such records pertaining to a trip

that was never flown." Doc. 284-5. In the parties' joint letter of February 15, 2022, CAA told the Court that "on several occasions during discovery, at the request of Plaintiffs, CAA searched for, but could not locate, documents concerning the Untaken Flight. This remains true as to CAA's most recent search for any such documents, which took place *after* the February 9th 'meet and confer' among counsel." Doc. 284 at 4-5. CAA's representation to the Court, however, was utterly false. In fact, it turned out that CAA had not only located a document about the Untaken Flight, but also that CAA had taken affirmative steps to conceal information about the Untaken Flight from Plaintiffs through a baseless and improper redaction.

Indeed, on March 14, 2022, after the Court instructed CAA to produce any responsive documents about the Untaken Flight, "in order to close out this discovery issue once and for all", Doc. 285 at 3, CAA finally un-redacted the Expense Report and revealed information about the Untaken Flight. Ex. 2 (filed under seal). The document produced directly contradicts all of CAA, Silver, and France's testimony about France's involvement in the Signing, and about when Golladay decided to change agents. The expense entry for the flight states it is for a "[f]light to Chicago to meet with an NFL Veteran *recruit* and his family." *Id.* (emphasis added). The flight was categorized as "Client New Business (*Prospective* Client)" and "Football NFL Veteran *Recruiting*." *Id.* (emphasis added). In other words, before the Signing, Golladay was not a client of France and CAA—he was a "prospective client" who

was being "recruit[ed]" by France and CAA. This evidence directly contradicts Defendants' argument that Golladay had already made up his mind and committed himself to France and CAA before the Signing.

CAA's failure to produce this evidence and subsequent hiding of this information under a redaction (while claiming the evidence did not exist) was a blatant attempt to hide this evidence from Plaintiffs and the Court. CAA told Plaintiffs and the Court that it had no documents at all responsive to RFP 1. Only after Plaintiffs' strenuous efforts did CAA then trickle out a few documents. And, on one of those documents, CAA *redacted the very information it knew Plaintiffs sought*. CAA's redaction shows an utter disregard for its obligations under the Federal Rules of Civil Procedure and for its duty of candor to Plaintiffs and to this Court. This conduct cannot be condoned or overlooked. It is egregious and warrants heavy sanctions. Indeed, the seriousness of CAA's action demand that its Answer be stricken, as discussed below.

**B.    CAA's Failure to Produce One of Two Email Attachments.**

CAA also failed to produce another smoking gun document, for the same apparent reason as above: CAA sought to hide France's involvement in the Signing. Hiding France's involvement not only served France, but also served CAA, who is represented by the same attorneys.

In response to Plaintiffs' First Set of Requests for Production, CAA produced a handful of documents on October 23, 2020, which includes at least one email that proves France was intimately involved in arranging the Signing. In this January 8, 2019 email (the "France-Golladay email"), France forwarded to Golladay a draft contract (prepared by CAA) to be entered into between Golladay and Boone's company, Boone Enterprises Inc., to govern the Signing. Doc. 188-1. France directed Golladay to sign the contract for the Signing, and even asked if Golladay would like France to send a copy to Golladay's mother. *Id.* at 2. France wrote to Golladay: "Please sign this and send back. If easier I can text to you also. If you want mom to get a copy let me know I can send to her also." *Id.* The subject line of the France-Golladay email reads "Golladay_Kenny Boone Enterprises private contract.pdf." *Id.* at 2. Here is the email:



13

Doc. 188-1. The contract for the Signing is listed on the face of the email as a PDF attachment, and it was produced by CAA behind the email. *Id.* Subsequently, Silver was deposed and testified that he, not France, sent this email to Golladay from France's desktop computer located in the CAA offices in Atlanta, Georgia:

> Q.    Where were you when you say that you sent this e-mail from Todd France's e-mail account to Kenny Golladay's e-mail account on January 8, 2019?
>
> A.    At that point, I would have to be *in the office* because that was *the only way I could have done it*.
>
> Q.    Would you have had to be physically in Todd France's office?
>
> A.    Yes, I would assume so.
>
> Q.    Did you have the ability to get onto Todd France's e-mail from your computer or did you have to do that from his computer?
>
> A.    I don't believe I had any way to do that from my computer. *I think I had to do it from his computer*.
>
> Q.    And so is it your testimony that you went into his office and sent this e-mail *from his computer*?
>
> A.    From my recollection, yes. That's my testimony.
>
> Q.    And did Mr. France have a desktop computer or a laptop computer in his office?
>
> A.    A desktop. I'm pretty sure it was desktop.

Ex. 3, Deposition of Jake Silver, at 194:4 – 195:3 (emphasis added).

The claim by Silver that he sent the email to Golladay, rather than France, was intended to support the claim that France knew nothing about the Golladay Signing.

But, there was a second attachment to the France-Golladay email, titled "ATT00001.txt", that CAA *withheld* from production when it produced the email and the other attachment (the Signing contract). CAA did not tell Plaintiffs it had

withheld the second attachment for non-responsiveness or any other reason; it simply did not produce it and apparently hoped Plaintiffs would not notice. After Plaintiffs filed another Motion to Compel against CAA, *see* Docs. 242, 243, CAA produced the France-Golladay email in native format on June 23, 2021. Only then were Plaintiffs able to click on and see the content of second attachment that CAA had omitted from its production of the email itself.

The second attachment was France's signature block; it includes a statement that the email was "Sent from iPhone please excuse any typos."



Ex. 4.

This second attachment shows that the email forwarding the Signing contract to Golladay was sent "from [France's] iPhone" rather than from his computer. This directly contradicts Silver's sworn testimony that he – rather than France – sent the January 8, 2019 email and Signing contract to Golladay from France's office

computer. The attachment shows that France's and Silver's testimony about France's noninvolvement in the Signing was false.[2]

It is sanctionable conduct for CAA to withhold a smoking gun email attachment that *disproves* CAA's employees' own testimony. This evidence is highly relevant to the disputed facts in this case and should not have been withheld.

### C.    Heavy Sanctions are Warranted.

CAA's failure to produce key, obviously responsive documents, its hiding of evidence via non-production and redaction, and its withholding of an attachment that disproves much of its employee's own testimony is a pattern of egregious discovery abuse. It shows a bad faith, concerted effort to hide evidence from Plaintiffs and a near total disregard for the rules of discovery. And it is an affront to the Court. Sanctions are warranted. *Winters v. Textron*, Inc., 187 F.R.D. 518, 521 (M.D. Pa. 1999) ("It is contrary to our sense of justice to hide evidence in any case once the party has been given notice of and made aware of litigation.").

Rule 37 allows this Court to award sanctions against CAA for its discovery abuse, including entering default or striking CAA's pleadings in whole or in part.

---

[2] As further support for this point, Plaintiffs retained a computer forensics expert to examine the metadata associated with the native version of France's January 8, 2019 email to Golladay. The expert's written report states the opinion that the email's metadata shows it was sent to Golladay through a cellular phone network (as one would expect when an email is sent from an iPhone) rather than through a computer network that would be associated with a desktop or laptop computer.

*Clientron Corp.*, 894 F.3d at 577. In *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir.1984), the Third Circuit set forth six factors which must be considered in determining whether to order the sanction of dismissing a plaintiff's action or striking a defendant's answer. The Poulis factors are "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Id.* at 747 F.2d at 868. "There is no 'magic formula' or 'mechanical calculation' to determine whether the case should be dismissed," or an answer stricken. *Simpson v. Pa. Bd. Prob./Parole*, 2022 WL 821174, at *6 (M.D. Pa. Mar. 17, 2022) (citing *Briscoe v. Klaus,* 538 F.3d 252, 263 (3d Cir. 2008) and *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). "While 'no single *Poulis* factor is dispositive,' we have also made it clear that 'not all of the *Poulis* factors need be satisfied in order to dismiss a complaint.'" *Id.* (citing *Briscoe*, 538 F.3d at 263 (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003) and *Mindek*, 964 F.2d at 1373)). Each of the *Poulis* factors is discussed here in turn.

### 1. "The extent of the party's personal responsibility"

This factor weighs heavily in favor of striking CAA's Answer. CAA drove the litigation strategy to try to keep Plaintiffs from obtaining critical and highly responsive evidence. France and Silver both worked at CAA until Fall of 2020. CAA must have approved the redaction that continued to hide smoking gun evidence from Plaintiffs up until March 2022. In addition, this Court has already sanctioned CAA's attorneys, *see* Doc. 250, who may therefore have been incentivized to play fairer in discovery without urging from their client to continue the strategy.

### 2. "The prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery"

The Third Circuit has stated that "[e]vidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." *Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Id.* at 874. However, prejudice is not limited to "irremediable" or "irreparable" harm. *Id.*; *see also Ware*, 322 F.3d at 222; *Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 693-94 (3d Cir. 1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." *Ware*, 322 F.3d at 222. "Oftentimes, this type of prejudice

involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance." *Briscoe*, 538 F.3d at 259.

Under these standards, Plaintiffs have been severely prejudiced. Each of CAA's actions detailed above deprived Plaintiffs of necessary information and caused Plaintiff to "expend costs to obtain court orders for compliance." *See id.* In addition, Plaintiffs were for years burdened by CAA's improper stonewalling and obstructionism, impeding Plaintiffs' ability to prepare a full and complete trial strategy. *See Ware*, 322 F.3d at 222. This case has gone on for more than three years because of CAA's and its attorneys' refusal to follow the rules of discovery.

### 3.    "A history of dilatoriness"

"Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Briscoe*, 538 F.3d at 260 (3d Cir. 2008) (quoting *Adams*, 29 F.3d at 874); *see also Ware*, 322 F.3d at 224 (finding that a history of dilatory conduct existed because the plaintiffs "failed repeatedly" to provide a damages calculation for the defendant). CAA's actions in this case are the epitome of extensive and repeated delay. The amount of time and effort it took Plaintiffs to pry from CAA a legitimate, unredacted document production speaks for itself.

19

### 4.    "Whether the conduct of the party or the attorney was willful or in bad faith"

Under this factor, the District Court must consider whether the conduct was "the type of willful or contumacious behavior which was characterized as flagrant bad faith." *Briscoe*, 538 F.3d at 262. Generally, "[w]illfulness involves intentional or self-serving behavior." *Id.* (quoting *Adams*, 29 F.3d at 875). If the conduct is merely negligent or inadvertent, the Third Circuit will not call the conduct "contumacious." *Id.* (citing *Poulis*, 747 F.2d at 868–69).

CAA's actions described above were self-serving: CAA wanted to keep its employees' true involvement in the Signing from coming to light in an attempt to minimize its own liability in this case. The non-production of documents and redaction of key information was willful and contumacious. Withholding key documents, including an attachment to a document that was produced, and purposefully redacting highly relevant and responsive information is not merely negligent or inadvertent. This factor supports the striking of CAA's Answer.

### 5.    "The effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions"

CAA's attorneys have already been sanctioned by the Court once in this case for abusive and obstructionist behavior during a deposition. Doc. 250. But those sanctions were not enough to persuade CAA or its counsel to act in good faith in discovery. Plaintiffs should receive their costs and attorneys' fees, which have been

unnecessarily driven up by CAA's bad faith and dilatoriness as detailed herein, but it is clear that a sanction of costs and fees would not be effective as a sanction. CAA Sports holds itself out as the largest sports agency in the world – paying costs and fees in this case is a relatively modest sanction for an entity of that size. CAA's conduct in this litigation cannot be condoned, and it should be deterred from repeating this conduct in this case and with any future litigant.

### 6.   "The meritoriousness of the claim or defense"

CAA's attempt to cover up what actually happened—namely its' employees intimate involvement in the tortious interference Plaintiffs allege in this case—speaks volumes. CAA went to great lengths to hide its involvement in the relevant events – something it would not have done if it believed those facts did not matter.

In sum, the *Poulis* factors weigh in favor of striking CAA's pleading. The egregiousness of the discovery abuse combined with the fact that CAA's attorneys have already been sanctioned and ordered to pay Plaintiffs' costs and fees support such a sanction.

## II.   The Boone Defendants' Answer Should Be Stricken.

Plaintiffs' First Set of Interrogatories to the Boone Defendants asked them to identify each person "with knowledge of the facts alleged in the Second Amended Complaint[.]" Doc. 70-3 at 6 (Interrogatory #2). On March 2, 2020, Boone responded to Interrogatory #2 by listing nine individuals: Plaintiff Jason Bernstein

21

and Emily Ries of Clarity Sports, the four individual Memorabilia Dealer defendants, Golladay, Golladay's' mother, and Golladay's mentor. *Id.* No one from CAA was identified at all. Interrogatory #8 asked Boone: "Have you had any communications with any employee, agent, or representative of CAA, or any individual associated with CAA or negotiating on CAA's behalf?" *Id.* at 12. Boone objected and refused to answer, claiming Interrogatory #8 "seeks information that is irrelevant to this litigation [and] the subject matter at issue[.]" *Id.* at 13. Plaintiffs promptly filed a Motion to Compel (Docs. 69, 70), which the Court granted on March 31, 2020. Doc. 74.

In the meantime, however, the NFLPA arbitrator issued his Opinion and Award on March 27, 2020 in the *Bernstein v. France* NFLPA grievance. Ex. 5. It was only afterwards, on June 1, 2020, that Boone served "supplemental" interrogatory responses in which he revealed CAA's involvement in the Signing *for the first time*. Doc. 120-1. In response to Interrogatory #2, Boone identified Jake Silver of CAA in his list of persons with factual knowledge. *Id.* at 4. In response to Interrogatory #8, Boone now revealed for the first time that CAA had been behind the Golladay Signing all along. *Id.* at 9-11. This information had been in Boone's possession since the events at issue occurred in late 2018 and early 2019. Boone simply omitted them when he responded to Plaintiffs' interrogatories on March 2, 2020. Doc. 70-3.

Boone went to great lengths to hide CAA's involvement while the arbitration was still pending. His attorneys argued it was "incredulous" and "preposterous, absolutely preposterous" for Plaintiffs to allege the Memorabilia Dealer Defendants had worked with Todd France and/or his employer, CAA Sports, to set up the Signing for Golladay. Doc. 81-1, July 23, 2019 Hearing Transcript, at 33:4-34:1. Further, in their initial Answers, Boone and the other Memorabilia Dealer Defendants falsely *denied* the paragraphs of the Second Amended Complaint that allege they worked with CAA Sports to arrange an autograph signing for Golladay. *See, e.g.*, Doc. 40 at ¶¶ 69-70; Doc. 60 at ¶¶ 69-70; Doc. 61 at ¶¶ 69-70; Doc. 62 at ¶¶ 69-70. These Answers were filed in January, 2020 – after the arbitration hearing but *before* the NFLPA arbitrator had issued his decision. Boone served false interrogatory responses and filed an Answer containing false denials of Plaintiffs' allegations in order to keep Plaintiffs from having information they needed for both this case and for the NFLPA arbitration.

After the Court ordered them to respond to Plaintiffs' discovery requests, this series of false denials came to light. That, of course, is not how discovery is supposed to work, but it is consistent with Defendants' efforts to hide evidence from Plaintiffs at every turn in this litigation.

Boone and his attorneys were highly motivated to hide CAA's involvement from Plaintiffs when they served Boone's Interrogatory Responses on March 2,

2020. Boone is represented in this litigation by Michael Iaconelli and Williams Clements, who also represent CAA in this case and France in the NFLPA arbitration proceedings between Bernstein and France. When Boone served his original interrogatory responses, the arbitration hearing had occurred but the arbitrator had not yet issued an award. At the hearing, France steadfastly denied either he or CAA was involved with the Signing. Bernstein asked the arbitrator to keep the proceedings open as he pressed to obtain information about France and CAA's involvement in this, but the arbitrator denied that request. Instead, on March 27, 2020, the arbitrator accepted France's false testimony[3] and decided the arbitrator in France's favor in reliance on that false testimony. Thus, as counsel to Boone, France, and CAA, Mr. Iaconelli and Mr. Clements *knew* that Boone's truthful responses to the Interrogatories would completely contradict France's testimony in the arbitration. They were highly incentivized to keep CAA's involvement from coming to light at least until the arbitration decision came down.

---

[3] For, example, France testified under oath that neither he nor CAA was involved in the Signing:

> Q: Have you spoken with anyone at CAA Sports about whether or not CAA Sports was involved in the January 21st, 2019 memorabilia signing since the November 19th hearing?

> France: Did I ask anybody? I don't need to ask anybody. *I know that the answer is, no, we had nothing to do with it.*

Ex. 6, December 12, 2019 Arbitration Hearing Tr. 238:1-22 (emphasis added).

The *Poulis* factors apply here and warrant the striking of Boone's Answer. Boone cannot point to his counsel, as he personally signed the false Interrogatory Responses under oath. Doc. 70-3 at 17. He brazenly and intentionally withheld the information that he later revealed in Doc. 120-1. Parties cannot be allowed to omit key information from discovery responses simply because it increases their liability or hurts parties with whom they are aligned and with whom they share counsel.

## III. The Court Should Give an Adverse Inference Instruction Against Redland and Ochs.

### A. Redland/Ochs Had a Duty to Preserve Discoverable Evidence.

Gerry Ochs testified he communicated with Boone about the Signing via text message, Ex. 7, 51:3-6, but admitted he did not retain or preserve those text messages. Instead, as Ochs testified, his smart phone was destroyed when it "melted" in a hot car at "the end of June, beginning of July of 2019." *Id.*, 52:11-15. All of the text messages were lost, *id.*, 52:22-53:12, and Ochs did not print out or otherwise preserve those text messages. *Id.*, 53:13-54:5. Plaintiffs were thus deprived of highly relevant communications among the Defendants about Kenny Golladay and the Signing. The Court should sanction Ochs and give an adverse inference instruction to the jury about the content of these lost communications.

Plaintiffs filed this lawsuit against Ochs on February 22, 2019, and Ochs was served with the Complaint on February 24, 2019. Ex. 8. Plaintiffs served interrogatories and requests for production on Ochs when they served the Complaint,

and Ochs responded to those on July 11, 2019. Ex. 9 (July 11, 2019 letter from Iles Cooper). Ochs was under a duty to preserve relevant information from the time he was served with the Complaint, on February 24, 2019.

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Culler v. Shinseki*, 2011 WL 3795009, at *3 (M.D. Pa. Aug. 26, 2011) (quoting *Ogin v. Ahmed*, 563 F.Supp.2d. 539, 542 (M.D.Pa. 2008)); *Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd.*, 348 F.Supp.2d 332, 335 (D.N.J.2004). "The duty to preserve evidence begins when litigation is 'pending or reasonably foreseeable.'" *Id.* (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). *See also TelQuest Int'l Corp. v. Dedicated Bus. Sys., Inc.*, 2009 WL 690996, at *3 (D.N.J. Mar. 11, 2009) ("In this case, Defendants' duty to preserve arose, at the latest, in November 2006, when TelQuest filed and served its Complaint."); *Dunn v. Mercedes Benz of Ft. Washington, Inc.*, 2012 WL 424984, at *5 (E.D. Pa. Feb. 10, 2012). Here, Ochs had a duty to preserve evidence after being served with the Complaint. *Culler*, 2011 WL 3795009, at *3.

Ochs' conduct is spoliation of evidence. Ochs was under a duty to preserve his communications about Golladay and the Signing but he made no effort to do so. His duty arose no later than February 22, 2019, when he was served with the Complaint. "At that time, [Ochs] had notice that this litigation had begun and

26

therefore had an affirmative obligation to preserve potentially relevant evidence." *TelQuest Int'l Corp.*, 2009 WL 690996, at *3. *See also Clientron Corp.*, 894 F.3d at 577 n.5. (holding court may impose an adverse inference "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, ... it cannot be restored or replaced through additional discovery," and "the party acted with the intent to deprive another party of the information's use in the litigation.") (citing Fed. R. Civ. P. Rule 37(e)). Where a spoliation claim is established, this Court may impose sanctions – including dismissal of a claim or granting judgment in favor of a prejudiced party, suppression of evidence, an adverse (or spoliation) inference, fines, and attorneys' fees and costs. *Culler*, 2011 WL 3795009, at *6 (citing *Mosaid*, 348 F.Supp.2d at 335).

### B.   The Court Should Give an Adverse Inference Instruction.

An adverse inference instruction is warranted because Ochs' conduct satisfies the four factors for determining whether to give such instruction. Those factors are (1) the evidence in question must be within the party's control; (2) it must appear that there has been actual suppression or withholding of the evidence; (3) the evidence destroyed or withheld was relevant to claims or defenses; and (4) it was reasonably foreseeable that the evidence would later be discoverable. *Ogin*, 563 F. Supp. 2d at 543 (citing *Mosaid*, 348 F.Supp.2d at 336). Here, the text messages were

clearly in Ochs' control; they were destroyed and not produced; they were relevant because they concerned the Signing and Golladay; and the allegations in the Complaint put Ochs on notice that the text messages would be discoverable. *See Ogin*, 563 F. Supp. 2d at 543 ("While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation, it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation.") (citation omitted).

In determining whether to issue this sanction, the Court must also consider the factors from the Third Circuit's decision in *Schmid v. Milwaukee Electric*, 13 F.3d 76 (3d Cir. 1994). Those are (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Id.* at 79; *Ogin*, 563 F. Supp. 2d at 545. The first consideration is indisputable: the destruction and failure to preserve evidence was the fault of Ochs. As to the second factor, Plaintiffs have been prejudiced because Ochs' conduct deprived them of information highly relevant to their claims. It is reasonable to infer Ochs' communications about the Signing would have been favorable to Plaintiffs' case. *See Ogin*, 563 F. Supp. 2d at 545 (M.D. Pa. 2008) ("If a party has notice that evidence is relevant to an action, and either proceeds to

destroy that evidence or allows it to be destroyed by failing to take reasonable precautions, common sense dictates that the party is more likely to have been threatened by that evidence."). As to the third factor, an adverse inference is regarded as a "far lesser sanction" a default judgment, *Int'l Fin. Co., LLC v. Jabali-Jeter*, 2019 WL 2268961, at *17 (E.D. Pa. May 28, 2019), and is warranted here. *See id.* (levying adverse spoliation inference sanction and monetary sanction of associated costs and fees). No other sanction can correct the injustice here or deter others from utter failure to preserve highly relevant information.

## IV.   Plaintiffs Also Seek Their Costs and Attorneys' Fees Caused by Defendants' Discovery Abuses.

In addition to the sanction of striking pleadings and ordering an adverse inference instruction at trial, there should also be a monetary sanction. Rule 37(b)(3) provides that this Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to comply with the Court's discovery order, unless the failure was substantially justified or other circumstances make an award of expenses unjust. Rule 37(c)(1)(A) provides that the Court "may" order payment of such expenses and fees caused by Defendants' failure to produce information under Rule 26(e).

Here, Plaintiffs also seek their costs and reasonable attorneys' fees associated with their consistent efforts to pry routine discovery from Defendants. Plaintiffs also seek their costs and reasonable attorneys' fees associated with briefing this Motion.

Those costs were all a result of Defendants' sanctionable behavior and should be awarded in addition to the heavier sanctions discussed above.

## **CONCLUSION**

Plaintiffs Clarity Sports International LLC and Jason Bernstein respectfully request that this Court grant their Motion for Sanctions and enter an Order:

(1)     striking the Answer of Defendant CAA Sports. LLC;

(2)     striking the Answer of Defendants Craig Boone and Boone Enterprises, Inc.;

(3)     stating that an adverse inference instruction will be given to the jury against Defendants Gerry Ochs and Redland Sports regarding the content of communications that Ochs and Redland failed to preserve and destroyed or allowed to be destroyed; and

(4)     awarding Plaintiffs their costs and attorneys' fees in bringing this Motion and caused by the sanctionable conduct, to be shown as the Court directs.

Dated:  May 5, 2022

Respectfully submitted,

DOWD BENNETT LLP

By:  /s/ *John D. Comerford*
     John D. Comerford #60164MO
     James B. Martin #70219MO
     7733 Forsyth Blvd., Suite 1900
     St. Louis, Missouri 63105
     (314) 889-7300 (phone)
     (314) 863-2111 (facsimile)
     jcomerford@dowdbennett.com
     jbmartin@dowdbennett.com

BUZGON DAVIS LAW OFFICES

     Scott L. Grenoble
     Attorney I.D. #72808
     525 South Eighth Street
     Post Office Box 49
     Lebanon, PA    17042-0049
     (717) 274-1421
     Fax: (717) 274-1752
     E-mail: sgrenoble@buzgondavis.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2022 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.

/s/ *John D. Comerford*

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.8(B)(2)</u>

1.      Prior to filing the foregoing, the undersigned moved for leave to file a Brief in Support of Motion for Sanctions that exceeds 15 pages or 5,000 words. Doc. 292.

2.      On May 4, 2022, the Court granted that request and allowed Plaintiffs to file a brief of up to 30 pages and/or 10,000 words. Doc. 293.

3.      The foregoing Brief in Support, exclusive of its cover page, table of contents, table of authorities, this certificate and the certificate of service consists of 30 pages of text and contains 7,045 words (footnotes included) as determined through the word count function of Microsoft Word. Including all of the foregoing, the word count is 7945 words.

Dated:  May 5, 2022                                      /s/ *John D. Comerford*