**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLARITY SPORTS** | : | |
| **INTERNATIONAL LLC and JASON** | : | **No. 1:19-cv-00305** |
| **BERNSTEIN,** | : | |
| **Plaintiffs** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **REDLAND SPORTS, et al.,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Before the Court in the above-captioned action is the March 8, 2024 Report and

Recommendation of Magistrate Judge Carlson (Doc. No. 388) (the "Report and

Recommendation") recommending that the Court grant in part and deny in part Plaintiffs Jason

Bernstein and Clarity Sports International LLC ("Plaintiffs")' motion for sanctions against

Defendants CAA Sports LLC ("CAA"), Redland Sports and Gerry Ochs ("Redland/Ochs"),

Boone Enterprises Inc. d/b/a Boone Enterprises Authentic Autographs and Craig Boone (the

"Boone Defendants").  Also pending before the Court is Redland/Ochs' motion pursuant to

Federal Rule of Civil Procedure Rule 42 for separate trial or separate jury ("motion to

bifurcate").  (Doc. No. 408.)  Upon consideration of the briefing filed in connection with the

motion for sanctions, the Report and Recommendation, the parties' objections to the Report and

Recommendation, the briefing related to those objections, and the applicable law, and for the

reasons provided herein, the Court will adopt the Report and Recommendation and grant

Plaintiffs' motion in part.  The Court will deny Redland/Ochs' motion to bifurcate.

## I.    BACKGROUND

On July 17, 2020, Plaintiffs filed their operative Third Amended Complaint alleging that

CAA, Redland/Ochs, the Boone Defendants, and MVP Authentics, LLC, Daryl Eisenhour, and

Jason Smith ("MVP") tortiously interfered with Plaintiffs' representation, endorsement, and marketing agreements with National Football League ("NFL") wide receiver Kenny Golladay ("Golladay") by participating in a January 2019 Autograph Signing (the "Signing Event"), after which Golladay terminated his representation by Plaintiffs and signed with CAA.  (Doc. No. 120.)  Prior to the filing of the Third Amended Complaint, the case was referred to Magistrate Judge Schwab for pretrial management.  (Doc. No. 82.)  The Court has little doubt that the parties are familiar with the factual and procedural history of this case and therefore, the Court will only briefly discuss the facts before addressing the procedural history relevant to the instant motion.

In a related appeal resulting in the vacatur of an arbitration award granted in favor of former CAA Sports agent Todd France ("France") and against Plaintiff Bernstein,[1] the United States Court of Appeals for the Third Circuit ("Third Circuit") provided a brief overview of the principal conduct upon which Plaintiffs' claims are based.  Because the Third Circuit's statement provides a helpful background of the circumstances giving rise to this action, it is quoted in full below:

Bernstein and France are certified contract advisors (more commonly referred to

---

[1]  After Bernstein filed a grievance against France for violations of the National Football League Players Association ("NFLPA") Regulations, an arbitration was held and the  arbitrator found in favor of France.  See France v. Bernstein, 43 F.4th 367, 374 (3d Cir. 2022).  France filed a petition to confirm the award in the United States District Court for the Eastern District of Virginia (the site of the arbitration).  See id. at 375.  While discovery was ongoing in the instant matter, evidence was produced showing that France had been involved in the Signing Event, contrary to his former deposition and testimony during the arbitration.  See id. at 374–75.  Bernstein cross-moved to vacate France's award, relying on the newly discovered evidence.  See id. at 375.  The petition for confirmation of the award was transferred to this Court, and the Court confirmed the award and denied reconsideration.  See id. at 375–77.  Bernstein timely appealed to the United States Court of Appeals for the Third Circuit ("Third Circuit").  See id. at 377.  The Third Circuit reversed and remanded to this Court for entry of an order vacating the arbitration award finding that the arbitration award was procured by fraud.  See id. at 382.

as agents) registered with the National Football League Players Association ("NFLPA"). They each represent NFL players in contract negotiations with NFL teams and in related matters. Bernstein is also the majority owner of [Plaintiff Clarity Sports], which advises and represents professional athletes in matters other than their playing contracts, such as marketing and endorsement contracts. France, meanwhile, worked for the agency [CAA] during the period relevant to this case. As agents for NFL players, Bernstein and France must comply with the NFLPA Regulations Governing Contract Advisors ("the NFLPA Regulations"), which are a product of the collective bargaining agreement the players have with the NFL and its constituent teams.

Bernstein's roster of clients used to include Kenny Golladay, a wide receiver who signed a standard representation agreement ["SRA"] with Bernstein in late 2016, before Golladay's rookie season with the Detroit Lions in 2017. Golladay simultaneously signed a separate agreement with Bernstein's Clarity Sports for representation in endorsement and marketing deals ["EMA"]. Under those contracts, Bernstein and Clarity Sports were Golladay's exclusive representatives. As required by the NFLPA Regulations, the contracts were filed with the NFLPA.

That agency relationship ended on January 29, 2019, when Golladay terminated both agreements. Break-ups are seldom happy affairs, but Golladay's goodbye was particularly troubling to Bernstein because, three days earlier, Golladay had participated in an autograph-signing event in Chicago that Bernstein had played no role in arranging—even though setting up such publicity and money-making opportunities for Golladay was precisely what Bernstein and Clarity Sports were hired to do. Bernstein became aware of the event, but only because he saw a Facebook post from one of the three [Memorabilia Defendants] promoting it. Once Golladay's agreements with Bernstein and Clarity Sports were terminated, Golladay immediately signed with France. Bernstein soon came to believe that France and his colleagues from CAA Sports were behind the [S]igning [E]vent the whole time.

See France v. Bernstein, 43 F.4th 367, 371 (3d Cir. 2022) (footnotes omitted).

The NFLPA arbitration was held in November and December of 2019 between France and Plaintiff Bernstein, pursuant to the dispute resolution provisions in the NFLPA Regulations, after Bernstein filed a grievance against France. See id. Bernstein's grievance stated that France had initiated contact with Bernstein's client, Kenny Golladay ("Golladay"), and arranged an autograph-signing event for Golladay (the "Signing Event"). See id. Bernstein claimed that the

3

proceeds from the event had been used to induce Golladay to terminate his relationship with Bernstein and sign with France.  See id.  France denied any involvement in Golladay's participation at the Signing Event.  See id. at 372.  Due to information withheld prior to the arbitration hearing (which is the subject of the instant motion for sanctions), Bernstein was unable to meet his burden of proof because he lacked evidence to counter France's testimony. See id. at 373.  The arbitrator found in favor of France.  See id. at 374.  However,

> [i]t turns out that France did indeed have crucial evidence that should have been available to Bernstein  . . . .  While pursuing his NFLPA grievance against France, Bernstein, along with Clarity Sports, was also litigating a case (the "Parallel Action") in the U.S. District Court for the Middle District of Pennsylvania against CAA Sports and the three sports memorabilia dealers involved in the signing event.  The suit alleged tortious interference with contractual relationships.  See Third Amended Complaint, Clarity Sports Int'l LLC v. CAA Sports LLC, No. 1:19-cv-00305-YK-SES (M.D. Pa. July 17, 2020), ECF No. 120.  Discovery in that suit yielded information pertinent to the grievance against France.  The problem for Bernstein was that the information did not surface until June 2020, roughly two months after the arbitrator's decision denying the grievance. Bernstein had asked the arbitrator for an extension to file a post-hearing brief in light of the then-anticipated evidence from the Parallel Action, but the arbitrator denied that request.
>
> The newly revealed evidence showed that France was in fact involved with the autograph-signing event.  His involvement was at least implied in an interrogatory response from one of the memorabilia dealers, who said that one of France's colleagues at CAA Sports, Jake Silver, was instrumental in setting up the signing event:
>> Jake Silver is the person we have historically dealt with at CAA. Near the Christmas holidays in late December 2018, I had a telephone conversation with Jake Silver regarding such marketing events (such calls between us and various other parties are not unusual, but occur frequently in our ordinary course of business) . . . .  [W]hile discussing the possibility of various signing events, Jake Silver mentioned that Mr. Golladay, a player for the Detroit Lions, might be interested in doing an autograph signing event, and asked us if we were interested.

(J.A. at 1833.)

4

The same dealer also produced screenshots of text messages, one of which showed a thread among the dealers discussing event logistics, including "[c]ar service for Kenny/mom/Todd CAA[,]" presumably referring to Golladay, his mother, and France. (J.A. at 1853.) In a subsequent deposition, the dealer admitted that Silver said that someone named Todd would be joining Golladay at the signing event. No one has suggested who else "Todd" from CAA could be except for Todd France. In fact, Bernstein received other evidence showing that France was scheduled to fly to Chicago the day before the event.

As discovery continued in October 2020, it became perfectly clear that France was involved in arranging the signing event. CAA Sports produced an email from Silver to France attaching a contract for the event for Golladay's signature, plus another email from France to Golladay attaching the same contract and asking him to sign and return it.

See France, 43 F.4th at 371, 374–75 (footnotes omitted). Based on the above, the Third Circuit reversed and remanded to this Court for entry of an order vacating the arbitration award because the arbitration award was procured by fraud. See id. at 382.

As to the discovery process in the instant case, the parties engaged in what Magistrate Judge Carlson describes as "a painfully prolonged, and frequently contentious course of discovery, which spanned from 2019 through 2022."[2] (Doc. No. 388 at 6.) A review of the docket in this case reflects that Magistrate Judge Schwab issued eleven (11) case management orders (Doc. Nos. 84, 85, 166, 184, 202, 211, 220, 247, 260, 266, 279)[3] and issued Orders (Doc.

---

[2] In his Report and Recommendation, Magistrate Carlson elaborates by stating that:

> [o]ne of the factors which contributed to this dysfunctional course of discovery was the fact that CAA, and to a lesser extent the Boone defendants, engaged in instances in which they falsely denied or failed to disclose certain factual matters until they were compelled by Judge Schwab to make more fulsome disclosures to Clarity. These troubling episodes of denial, non-disclosure, and delay prolonged and complicated this litigation.

(Doc. No. 388 at 6–7.)

[3] The parties filed and briefed multiple motions for extensions of time to complete discovery. See (Doc. Nos. 154–55, 162–63, 180–81, 200–01, 224–25, 233, 238, 240–41, 245–46, 249).

Nos. 74, 190, 192, 251, 261, 280, 283, 285) on various motions to compel and related briefing

(Doc. Nos. 69–70, 143–44, 149, 151, 174–76, 187–88, 242–44, 248, 254, 255).[4]  Throughout

these disputes, Magistrate Judge Schwab held status conferences with the parties to manage the

case deadlines and resolve discovery issues.  See (Doc. Nos. 73, 118, 164, 186, 258).  CAA's

prior counsel were also sanctioned for their conduct in the course of depositions.[5]  (Doc. No.

250.)  Per Magistrate Judge Schwab's eighth amended case management order,[6] the expert

---

[4]  The Court notes that other issues arose throughout discovery, as evidenced by many entries on this case's docket.  The Court focuses on those issues most relevant to the instant motion for sanctions.

[5]  On April 9, 2021, Plaintiffs filed a motion for sanctions and supporting brief (Doc. Nos. 221–22) against CAA's prior counsel for their conduct during the Rule 30(b)(6) deposition of CAA's corporate representative Niloofar Shepherd ("Shepherd"), claiming that defense counsel "impeded, delayed, frustrated, and obstructed Plaintiffs' fair examination of CAA's corporate representative" (Doc. No. 222 at 1).  Plaintiffs also filed a motion for leave to file a copy of Shepherd's deposition transcript under seal (Doc. No. 223) and the document was filed under seal (Doc. No. 227).  In their motion and supporting brief, Plaintiffs requested the following: (1) an award of their costs and reasonable attorney's fees for the deposition of Shepherd; (2) an award of their costs and reasonable attorney's fees for bringing the motion; and (3) an Order of the Court directing CAA's prior counsel to comply with the Federal Rules of Civil Procedure in depositions.  (Doc. Nos. 221 at 1; 222 at 2.)  After the motion was fully briefed (Doc. Nos. 234, 239), Magistrate Judge Schwab granted the motion in part and denied the motion in part, finding that CAA's prior counsel "impeded, delayed, and frustrated the fair examination of Shepherd" which warranted sanctions of an award of expenses and attorney's fees (Doc. No. 250 at 7, 11).  The motion for sanctions was granted "to the extent that the [C]ourt imposes sanctions against [CAA's prior counsel] for their inappropriate conduct during the Shepherd deposition" and ordered CAA's counsel to pay "20% of the reasonable expenses and attorney's fees that Plaintiffs incurred in deposing Shepherd and 100% of the reasonable expenses and attorney's fees that Plaintiffs incurred in filing and briefing their motion for sanctions."  (Doc. No. 250 at 12–13.)  Magistrate Judge Schwab further ordered that "all counsel are reminded that in all depositions in this case, they shall comply with the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 30(c)(2), and they shall be courteous, respectful, and professional."  (Id. at 13.)  The motion for sanctions was otherwise denied.  (Id.)

[6]  The Order is listed on the docket as Magistrate Judge Schwab's eighth amended case management order, but it is actually Magistrate Judge Schwab's tenth amended case management order.  See (Doc. Nos. 84, 85, 166, 184, 202, 211, 220, 247, 260, 266, 279).

discovery deadline was set for April 8, 2022 and the dispositive motion deadline was set for May 6, 2022.  (Doc. No. 279.)

On May 5, 2022, Plaintiffs filed the instant motion for sanctions, with a supporting brief, against CAA, the Boone Defendants,[7] and Redland/Ochs, pursuant to Federal Rule of Civil Procedure Rule 37 ("Rule 37"), alleging that these Defendants improperly withheld and destroyed evidence in this case.[8]  (Doc. Nos. 296–97.)

Later in May 2022, Defendants filed three motions for summary judgment against Plaintiffs as to Plaintiffs' claims of tortious interference with contract.[9]  (Doc. Nos. 298, 300, 302.)  On July 26, 2022, the Court issued an Order stating that the case remained referred to Magistrate Judge Schwab for pretrial management, including the motion for sanctions, but all dispositive motions, including the motions for summary judgment, would be resolved by the undersigned.  (Doc. No. 335.)

On September 9, 2022, after Plaintiffs' motion for sanctions was fully briefed (Doc. Nos. 297, 319–24), Magistrate Judge Schwab held a hearing on the motion (Doc. No. 350).  Exhibits were admitted into evidence by counsel, but no witness testimony was offered.  See (Doc. Nos. 350–53, 355).  On December 13, 2022, Magistrate Judge Schwab referred the motion to Magistrate Judge Carlson for resolution.  (Doc. No. 360.)  Due to a clerical error, the motion for

---

[7]  The Court notes that Plaintiffs' motion does not seek sanctions against MVP; however, MVP is represented by the same attorneys as the Boone Defendants and the parties have filed submissions jointly throughout this litigation.  As noted infra, Boone/MVP filed a joint motion for summary judgment (Doc. No. 300) and a brief in opposition to the motion for sanctions (Doc. No. 321).  The Court collectively refers to them as "Boone/MVP."

[8]  Rule 37 concerns the failure to make disclosures or to cooperate in discovery as well as the possible sanctions available for such conduct.  See generally Fed. R. Civ. P. 37.

[9]  The three motions were filed by CAA (Doc. No. 298), Boone/MVP (Doc. No. 300), and Redland/Ochs (Doc. No. 302).

sanctions was not referred to Magistrate Judge Carlson in the first instance.  See (Doc. No. 375 at

1).  Upon realization of this clerical error, on August 31, 2023, Magistrate Judge Carlson issued

an Order stating as follows:

> Upon review of the pleadings, it appears that the record is complete, and the
> motion is fully briefed and therefore is ripe without the necessity of any further
> submissions by the parties. Nonetheless, acting out of an abundance of caution if
> the parties wish to bring any additional information or supplemental authority to
> our attention they must do so on or before September 14, 2023.  No further
> submissions will be entertained on this motion after September 14, 2023, except
> with the express permission of the court.

See (id. at 1–2) (footnotes omitted).  On September 14, 2023, CAA's counsel filed a letter on the

docket, agreeing that the motion was fully briefed and that CAA would not be filing "any

additionally submission with the Court."  (Doc. No. 376.)  That same day, Plaintiffs' counsel

filed a letter on the docket also agreeing that the motion was fully briefed and that Plaintiffs

would not be filing "an additional submission with the Court."  (Doc. No. 377.)

On November 3, 2023, after the motions for summary judgment were fully briefed (Doc.

Nos. 299, 301, 304, 310, 312–313, 329–31, 341–42, 363–65), the Court issued an Order denying

all three motions for summary judgment (Doc. No. 384).  On November 16, 2023, the Court held

a telephone status conference with the parties to discuss a potential date for trial.  (Doc. No.

385.)  On December 20, 2023, the Court issued an Order setting the case for trial on July 15,

2024.  (Doc. No. 386.)

On March 8, 2024, Magistrate Judge Carlson filed his Report and Recommendation on

the motion for sanctions.  (Doc. No. 388.)  On March 18, 2024, four days before the deadline to

submit objections to the Report and Recommendation in accordance with this Court's Local Rule

72.3, Boone/MVP's counsel filed a motion to withdraw.  (Doc. No. 389.)  Later, on March 22,

2024, Boone/MVP's counsel filed "placeholder" objections to the Report and Recommendation.

(Doc. Nos. 391–92.)  CAA and Plaintiffs also filed objections to the Report and Recommendation.  (Doc. Nos. 393, 396.)  On March 22, 2024, the Court stayed all pending deadlines.  (Doc. No. 395.)  After holding a status conference with the parties on March 26, 2024, the Court issued an Order granting Boone/MVP's counsel's motion to withdraw and ordering Boone/MVP to advise the Court by April 23, 2024 whether they obtained new counsel.  (Doc. No. 397.)  On April 23, 2024, new counsel for Boone/MVP entered their appearances.  (Doc. Nos. 400–02.)  On May 10, 2024, the Court issued an Order lifting the stay of deadlines and allowing Boone/MVP to file objections to the Report and Recommendation by May 24, 2024.  (Doc. No. 403.)

On May 16, 2024, CAA and Boone/MVP, with the concurrence of Redland/Ochs, filed a motion to continue trial.  (Doc. No. 404.)  After briefing of the motion to continue concluded (Doc. Nos. 407, 410), the Court issued an Order granting the motion to continue trial to a future date, pending resolution of Magistrate Judge Carlson's March 8, 2024, Report and Recommendation (Doc. No. 416).  On May 24, 2024, the Boone Defendants filed their objection to the Report and Recommendation.  (Doc. Nos. 411–12.)  The parties have fully briefed all three objections to the Report and Recommendation.[10]  (Doc. Nos. 405–06, 413–15, 417, 420–21.)

Separately, on May 22, 2024, Redland/Ochs filed a motion, and a supporting brief, to

---

[10]  On May 21, 2024, Plaintiffs filed an opposition to CAA's objection.  (Doc. No. 405.)  On May 22, 2024, Redland/Ochs filed a response to Plaintiffs' objection to the Report and Recommendation.  (Doc. No. 406.)  CAA and the Boone Defendants then filed a response to Plaintiffs' objection.  (Doc. No. 413.)  On May 28, 2024, CAA filed a reply to Plaintiffs' opposition to CAA's objection.  (Doc. No. 414.)  On May 29, 2024, Plaintiffs filed a reply to Redland/Ochs' response to Plaintiffs' objection.  (Doc. No. 415.)  On May 31, 2023, Plaintiffs filed a reply to CAA and the Boone Defendants' response to Plaintiffs' objection.  (Doc. No. 417.)  On June 7, 2024, Plaintiffs filed a response to the Boone Defendants' objections.  (Doc. No. 420.)  On June 14, 2024, the Boone Defendants filed a reply to Plaintiffs' response to the Boone Defendants' objections.  (Doc. No. 421.)

bifurcate pursuant to Federal Rule of Civil Procedure 42.[11]  (Doc. Nos. 408–09.)  The other

Defendants did not concur in the motion.  (Doc. No. 408-2.)  Plaintiffs and the other Defendants

filed briefs in opposition to Redland/Ochs' motion.  (Doc. Nos. 419–20.)  Having been fully

briefed, the motion to bifurcate is ripe for bifurcation.

## II.     LEGAL STANDARD

The Magistrate Act, 28 U.S.C. § 636 et seq., and Rule 72(b) of the Federal Rules of Civil

Procedure provide that any party may file written objections to a magistrate judge's proposed

findings and recommendations.  The written objections must "specifically identify the portions

of the proposed findings, recommendations or report to which objection is made and the basis for

such objections."  See M.D. Pa. L.R. 72.3.  When a party objects to a report and recommendation

of a magistrate judge, this Court must "make a de novo determination of those portions of the

report or specified proposed findings or recommendations to which objection is made."  See 28

U.S.C. § 636(b); M.D. Pa. L.R. 72.3.  The Court may "accept, reject, or modify, in whole or in

part, the findings or recommendations made by the magistrate judge."  See id.

## III.    DISCUSSION

The Court first describes Plaintiffs' motion for sanctions, setting forth Plaintiffs' claims

against each Defendant, and the resulting Report and Recommendation.  Then, the Court

addresses each Defendant's discovery conduct separately, considering the applicable law,

Plaintiffs' claims against each Defendant, Magistrate Judge Carlson's Report and

---

[11]  Under Federal Rule of Civil Procedure 42(b), "[f]or convenience, to avoid prejudice, or to
expedite and economize, the court may order a separate trial of one or more separate issues,
claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the
court must preserve any federal right to a jury trial."  See Fed. R. Civ. P. 42(b).

Recommendation as to each Defendant's conduct, and the relevant parties' objections, in order to resolve Plaintiffs' motion for sanctions.  After resolving the motion for sanctions, the Court then addresses Redland/Ochs' motion to bifurcate.

### A.      Plaintiffs' Motion for Sanctions

In their motion for sanctions, Plaintiffs request that the Court grant the motion for sanctions and enter an Order:

> (1) striking the Answer of Defendant CAA Sports, LLC;
>
> (2) striking the Answer of Defendants Craig Boone and Boone Enterprises, Inc.;
>
> (3) stating that an adverse inference instruction will be given to the jury against Defendants Gerry Ochs and Redland Sports regarding the content of communications that Ochs and Redland failed to preserve and destroyed or allowed to be destroyed; and
>
> (4) awarding Plaintiffs their costs and attorneys' fees in bringing this Motion and caused by the sanctionable conduct, to be shown as the Court directs.

(Doc. No. 296 at 2.)  Plaintiffs seek sanctions for Defendants' conduct under Federal Rules of Civil Procedure 37(b) and 37(e).[12]  (Doc. No. 297 at 10–12.)

First, as to CAA, Plaintiffs argue that CAA's answer should be stricken under Rule 37(b) because CAA failed to produce a "highly relevant expense report" concerning France's flight reservation to Chicago on the date of the Signing Event.[13]  (Id. at 12.)  Second, as to the Boone

---

[12]  As noted supra at note 8, Rule 37 concerns the failure to make disclosures or to cooperate in discovery as well as the possible sanctions available for such conduct.  See generally Fed. R. Civ. P. 37.  The specific provisions of Rule 37 applicable to the instant motion are discussed infra as appropriate.

[13]  Plaintiffs allege that the withholding of this information violated a discovery order under Rule 37(b)(2)(A), which states that, "[i]f a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders."  See Fed. R. Civ. P. 37(b)(2)(A).

Defendants, Plaintiffs assert that their answer should be stricken because Craig Boone provided false interrogatory responses and omitted CAA's involvement in the Signing Event prior to the NFLA arbitrator's decision.  (Id. at 26–27.)  Third, as to Redland/Ochs, Plaintiffs argue that the Court should give an adverse inference instruction against Redland/Ochs because Redland/Ochs failed to preserve and produce responsive information when Ochs' smart phone "melted."  (Id. at 30.)  Plaintiffs also seek their costs and attorney's fees caused by the alleged discovery abuses of the named Defendants.  (Id. at 34–35.)

In his Report and Recommendation on Plaintiffs' motion for sanctions, Magistrate Judge Carlson recommends granting Plaintiffs' motion for sanctions in part and denying it in part. (Doc. No. 388.)  Magistrate Judge Carlson recommends that the Court "should consider sanctioning CAA and the Boone Defendants by permitting [Plaintiffs] to present evidence of their discovery defaults and delays at trial in support of a claim that this alleged concealment constitutes evidence of consciousness of guilt," and that the Court impose costs and attorney's fees.  (Id. at 3.)  However, Magistrate Judge Carlson advises denying the motion as to Plaintiffs' request for default judgment against CAA and the Boone Defendants, and as to Plaintiffs' request for spoliation inference sanctions against Redland/Ochs.  (Id.)  As noted supra, Plaintiffs, CAA, and the Boone Defendants filed objections to the Report and Recommendation.  (Doc. Nos. 393, 396, 412.)  The Court next discusses each Defendant's conduct infra, considering the applicable law, Plaintiffs' claims, the Report and Recommendation, and the relevant objections.

1.      **CAA and the Boone Defendants**[14]

Plaintiffs allege that CAA and the Boone Defendants engaged in sanctionable misconduct that warrants the striking of CAA and the Boone Defendants' answers.  (Doc. No. 296 at 12–27.)

a.      **Applicable Legal Standards**

Rule 37 of the Federal Rules of Civil Procedure provides that, "[i]f a party . . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders," including sanctions.  See Fed. R. Civ. P. 37(b)(2)(A).  "The decision to impose sanctions" is within the Court's discretion.  See Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 538 (3d Cir. 2007).  Rule 37(b)(2) provides for the following possible sanctions for failure to obey a discovery order:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>
> . . . .
>
> (C) Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay

---

[14]  While CAA and the Boone Defendants engaged in different conduct, the Court discusses the parties in tandem based on the structure of the Report and Recommendation wherein Magistrate Judge Carlson often discusses them together, but differentiates between the parties' conduct when necessary.

the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

See Fed. R. Civ. P. 37(b)(2)(A), (C).  When a party seeks the most severe sanction (entry of default), the Third Circuit has stated that district courts must consider some or all of the six discretionary factors in Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984) (the "Poulis factors").  The Poulis factors are as follows:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1148 (3d Cir. 1990) (quoting Poulis, 747 F.2d at 868 (emphasis omitted)).  "[D]ismissals with prejudice or defaults are drastic sanctions, " and "must be [] sanction[s] of last, not first, resort."  See Poulis, 747 F.2d at 867, 869; see also Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund, 29 F.3d 863, 870 (3d Cir. 1994) (stating that "dismissal with prejudice is only appropriate in limited circumstances").  There is also a strong preference that "doubts should be resolved in favor of reaching a decision on the merits."  See Adams, 29 F.3d at 870, 878 (quoting Scarborough v. Eubanks, 747 F.2d 871, 878 (3d Cir. 1984)).

Separately, if a party fails to disclose, to supplement an earlier response, or to admit, Rule 37(c) provides:

> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or

instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

See Fed. R. Civ. P. 37(c)(1). Substantial justification is defined as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance." See Tolerico v. Home Depot, 205 F.R.D. 169, 175–76 (M.D. Pa. 2002) (citations omitted). "Rule 37(c)(1) allows for sanctions only against the parties, and not the lawyers." Selzer v. Dunkin' Donuts, Inc., No. 09-cv-05485, 2015 WL 3668647, at *3 (E.D. Pa. June 15, 2015) (citing Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 141 (3d Cir. 2009) (stating that "Rule 37(c)(1) does not permit sanctions against counsel")).

As to the failure to preserve electronically stored information,  Rule 37(e) provides:

(e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information

was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

See Fed. R. Civ. P. 37(e).  Although Rule 37(e)(1) requires that sanctions are "no greater than necessary to cure the prejudice,

> [t]he range of such measures is "quite broad."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Sanctions may include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument."  Id.

See Prelvukaj v. Naselli, No. 19-cv-05939, 2023 WL 3570659, at *10 (E.D.N.Y. May 18, 2023)).

### b.    Plaintiffs' Claims Against CAA and the Boone Defendants

First, as to CAA, Plaintiffs argue that CAA's answer should be stricken under Rule 37(b) because CAA failed to produce a "highly relevant expense report" concerning France's flight reservation to Chicago on the date of the Signing Event.  (Doc. No. 297 at 12.)  Plaintiffs claim that their first Request for Production sought "'each and every document or communication relating to Todd France's flight reservation(s) to Chicago, Illinois in January 2019, including but not limited to any reimbursement requests or communication about making such reservation."

See (id. at 13) (citing Doc. No. 285 at 2).  Plaintiffs maintain that:

> CAA produced no responsive documents.  Instead, on April 12, 2021, CAA served objections and filed a motion for protective order.  Docs. 228, 229.  On April 13, 2021, the Court entered an Order striking CAA's motion for protective order and removing it from the docket, and directing counsel for CAA to "confer on the telephone or via Zoom, or other video conference platform, with the plaintiffs' counsel regarding the issues it sought to raise in the stricken motion and attempt to civilly resolve these issues[.]"  Doc. 230.  After the parties' meet and confer call and more delay by CAA, Plaintiffs sought CAA's concurrence in a motion to compel.  See Doc. 243-1.  Only then did CAA finally serve responses.  See Docs. 243-3, 243-4.  In response to RFP 1, CAA stated that, "after reasonable

16

investigation, CAA has located no such documents in its possession custody, or control," and referred Plaintiffs to the Delta records.  Doc. 243-3 at 4.  This representation was not true.

On June 10, 2021, because of CAA's deficient responses, Plaintiffs filed a Motion to Compel.  Docs. 242, 243.  CAA's response to that Motion stated it "could locate no [] documents" responsive to RFP 1.  Doc. 244 at 18. CAA claimed it had fully responded to RFP 1 and there was "nothing to compel."  Id. at 19. CAA also stated that France regularly travels to Chicago to visit family, id. at 19 n. 11, a statement designed to create the false impression that any of his trips to Chicago had nothing to do with Golladay.  This statement likewise turned out to be entirely untrue.

On January 6, 2022, the Court entered an Order directing Plaintiffs to inform the Court about the outstanding issues in Plaintiffs' Motion to Compel. Doc. 280. On January 20, 2022, Plaintiffs informed the Court that one of the outstanding issues was RFP 1—and specifically that CAA still had produced no responsive documents.  Doc. 282 at 1.  On January 26, 2022, the Court entered an Order directing the parties to meet and confer again on the outstanding issues, and to file a joint letter advising on the status of those remaining issues. Doc. 283.  The parties filed that joint letter on February 15, 2022.  Doc. 284.

On February 14, 2022, the day before the parties' joint letter was due, CAA sent Plaintiffs a letter (Doc. 284-5) and produced three documents.  In its letter, CAA's attorney wrote that CAA had suddenly located "a handful" of additional documents.  Doc. 284-5 at 3.  The documents included France's expense report with CAA from January 2019, which was heavily redacted.  Ex. 1 (filed under seal) (the "Expense Report").  The only unredacted portions of the Expense Report were several entries relating to France's trip to Chicago two days after the Signing, all of which show the trip was specifically to meet with Golladay. Golladay is described as France's "Prospective Client" and "recruit."  Id. at CAA-1208-09.

(Id. at 12–15.)  Once the Expense Report was produced, Plaintiffs posit that CAA hid information under a redaction, which Plaintiffs describe as "a blatant attempt to hide this evidence from Plaintiffs and the Court . . . . CAA redacted the very information it knew Plaintiffs sought."  (Id. at 17.)  Plaintiffs note that CAA unredacted the document on March 14, 2022 after Magistrate Judge Schwab instructed CAA to do so.  See (id. at 16) (citing Doc. No. 285 at 3). Additionally, Plaintiffs allege that CAA also failed to produce one of two email attachments that

17

demonstrate that an email regarding the Signing Event contract[15] was not sent by Jake Silver

from France's computer, as he claimed in his deposition (Doc. No. 297-3 at 52, Tr. 194:4–195:3)

(Jake Silver's deposition transcript), but was actually sent from Todd France's iPhone (Doc. No.

297 at 17–20).  Plaintiffs posit that Silver's claim that he sent the email "was intended to support

the claim that France knew nothing about the Golladay Signing."  (Doc. No. 297 at 19.)

Plaintiffs claim that the second attachment that was withheld by CAA, entitled "ATT00001.txt,"

"shows that the email forwarding the Signing [Event] contract was sent 'from [France's] iPhone'

rather than from his computer."[16]  (Id. at 19–20).  Based on these claims and upon consideration

of Poulis factors, Plaintiffs argue that heavy sanctions against CAA are warranted in the form of

striking CAA's answer.  (Id. at 21–26.)

Second, as to the Boone Defendants, Plaintiffs assert that their answer should similarly be

stricken because Craig Boone provided false interrogatory responses and omitted CAA's

involvement in the Signing Event.  (Id. at 26–27.)  Plaintiffs argue that the Boone Defendants,

when asked in Interrogatory #2 to identify each person "with knowledge of the facts alleged in

---

[15]  Plaintiffs state that, "[i]n this January 8, 2019 email (the "France-Golladay email"), France
forwarded to Golladay a draft contract (prepared by CAA) to be entered into between Golladay
and Boone's company, Boone Enterprises Inc., to govern the Signing."  See (Doc. No. 297 at 18)
(citing Doc. 188-1).

[16]  Plaintiffs state that:

> [a]fter Plaintiffs filed another Motion to Compel against CAA, see Docs. 242,
> 243, CAA produced the France-Golladay email in native format on June 23, 2021.
> Only then were Plaintiffs able to click on and see the content of second
> attachment that CAA had omitted from its production of the email itself. The
> second attachment was France's signature block; it includes a statement that the
> email was "Sent from iPhone please excuse any typos."

See (Doc. No. 297 at 20) (citing Doc. No. 297-4 at 2) (copy of France's email).

the Second Amended Complaint," listed nine individuals, but no one from CAA was identified. See (id.) (citing Doc. No. 70-3 at 6).  Then, Plaintiffs claim that in response to Interrogatory #8 ("Have you had any communications with any employee, agent, or representative of CAA, or any individual associated with CAA or negotiating on CAA's behalf?"), the Boone Defendants objected and refused to answer, claiming that Interrogatory #8 "seeks information that is irrelevant to this litigation [and] the subject matter at issue[.]"  See (id. at 27) (citing Doc. No. 70-3 at 12–13).  Plaintiffs state that this response prompted a motion to compel (Doc. Nos. 69, 70) that Magistrate Judge Schwab granted on March 31, 2020 (Doc. No. 74).  (Id.)  Plaintiffs then remark that:

> [i]n the meantime, however, the NFLPA arbitrator issued his Opinion and Award on March 27, 2020 in the Bernstein v. France NFLPA grievance. Ex. 5.  It was only afterwards, on June 1, 2020, that Boone served "supplemental" interrogatory responses in which he revealed CAA's involvement in the Signing for the first time. Doc. 120-1.  In response to Interrogatory #2, Boone identified Jake Silver of CAA in his list of persons with factual knowledge.  Id. at 4.  In response to Interrogatory #8, Boone now revealed for the first time that CAA had been behind the Golladay Signing all along.  Id. at 9-11.  This information had been in Boone's possession since the events at issue occurred in late 2018 and early 2019. Boone simply omitted them when he responded to Plaintiffs' interrogatories on March 2, 2020.  Doc. 70-3.

See (id. at 27) (emphasis omitted).  Plaintiffs also claim that the Boone Defendants falsely denied paragraphs of the Second Amended Complaint that allege that the Boone Defendants and the other Memorabilia Defendants worked with CAA to arrange the Signing Event.  See (id. at 28) (citing Doc. Nos. 40 ¶¶ 69–70; 60 ¶¶ 69–70; 61 ¶¶ 69–70; 62 ¶¶ 69–70).

Plaintiffs note that these answers were filed after the arbitration hearing but before the NFLPA

arbitrator issued his decision.[17]  (Id. at 28–29.)  Because Craig Boone "personally signed the

false Interrogatory Responses under oath" (Doc. No. 70-3 at 17), Plaintiffs state that Craig

Boone cannot blame his counsel.  (Id. at 30.)  Based on the above, Plaintiffs assert that the Poulis

factors support the striking of the Boone Defendants' answer.  (Id.)

### c.    Report and Recommendation

Magistrate Judge Carlson recommends granting Plaintiffs' motion in part as to CAA and

the Boone Defendants, stating that the Court should consider sanctioning CAA and the Boone

"by permitting [Plaintiffs] to present evidence of their discovery defaults and delays at trial in

support of a claim that this alleged concealment constitutes evidence of consciousness of guilt."

(Doc. No. 388 at 3.)  He also recommends that CAA and the Boone Defendants "should be

required to pay the costs and fees incurred by [Plaintiffs] in this contentious discovery

litigation."  (Id.)  Magistrate Judge Carlson recommends denying Plaintiffs' motion in part as to

Plaintiffs' request for case dispositive default sanctions against CAA and the Boone Defendants.

(Id. at 3.)

As to CAA's misconduct, "[i]n reaching this recommendation," Magistrate Judge Carlson

states that:

> we do not in any way diminish or minimize the concerns voiced by the
> [P]laintiffs, nor do we regard these discovery defaults as trivial matters. Quite the
> contrary, in our view these discovery shortcomings, particularly on the part of
> CAA and its agents, were profoundly grave and troubling. In a number of material
> respects the defendants' approach to their discovery obligations seemed to value
> expedience over accuracy, and tactical advantage over transparency.

---

[17]  When the motion for sanctions was filed, the Boone Defendants were represented by Michael
Iaconelli and William Clements, who also represented CAA at the time and had represented
France in the NFLPA arbitration.  (Doc. No. 297 at 29.)

Most notably, CAA's conduct appears to have entailed a multi-facetted derogation of the defendant's discovery duties. Thus, CAA appears to have initially failed to provide access to discoverable documents, and then provided those documents in a redacted form, with some of the most relevant information regarding the characterization of Golladay as a potential recruit and prospective client deleted. These actions are particularly disturbing since we can perceive of no legitimate basis of these redactions given that the redacted information was not cloaked in any claim of privilege and was plainly relevant to [Plaintiff] Clarity's assertion that CAA was endeavoring to surreptitiously recruit its client. The redactions, therefore, have the appearance of gamesmanship rather than legitimate advocacy.

Further, CAA's employees, Silver and France, appear to have provided information regarding the transmission of proposed contracts to Golladay that was designed to mask France's direct involvement in this activity. Thus, Silver's insistence that he emailed the contract from CAA's offices appears to be inconsistent with other, immutable evidence indicating that the contract was emailed from France's cell phone.

(Id. at 20.)  Magistrate Judge Carlson notes that CAA has obtained new counsel since the alleged

misconduct.[18]  (Id. at 6 n.4.)

As to the Boone Defendants, Magistrate Judge Carlson finds that the Boone Defendants

engaged in sanctionable discovery misconduct, but "to a lesser extent" than CAA.  (Id. at 19.)

He elaborates by stating that:

[o]ne of the factors which contributed to this dysfunctional course of discovery was the fact that CAA, and to a lesser extent the Boone [D]efendants, engaged in instances in which they falsely denied or failed to disclose certain factual matters

---

[18] The Court notes that at the time of the alleged misconduct, CAA and Boone/MVP were represented by the same counsel.  (Doc. Nos. 32–33, 132, 137.)  On May 12, 2023, CAA's current counsel entered their appearances.  (Doc. Nos. 371–72.)  Shortly thereafter on May 26, 2023, CAA's former counsel filed a motion to withdraw as attorney.  (Doc. No. 373.)  On July 14, 2023, the Court granted CAA's former counsel's motion to withdraw as attorney.  (Doc. No. 374.)  However, CAA's former counsel still represented Boone/MVP until they also filed a motion to withdraw as attorney on March 18, 2024.  (Doc. No. 389.)  As discussed supra, the Court granted the motion to withdraw on March 27, 2024.  (Doc. No. 397.)  On April 23, 2024, Boone/MVP's current counsel entered their appearances.  (Doc. Nos. 400–02.)  The Court notes that Boone/MVP's new counsel is also CAA's current counsel and thus, and Boone/MVP are once again represented by the same counsel.

until they were compelled by Judge Schwab to make more fulsome disclosures to Clarity. These troubling episodes of denial, non-disclosure, and delay prolonged and complicated this litigation.

(<u>Id.</u> at 6–7.)  Although he finds that CAA and the Boone Defendants committed sanctionable misconduct, Magistrate Judge Carlson recommends that the Court decline to impose default judgments because other, lesser sanctions can be tailored to address the misconduct.  (<u>Id.</u> at 19– 20.)

Magistrate Judge Carlson explains that the "[c]ase law governing default judgment practice generally, also underscores that the resolution of litigation based upon the entry of a default judgment should often be the court's last resort and not its first impulse."  (<u>Id.</u> at 16.) Because Plaintiffs seek the entry of default judgment against CAA and the Boone Defendants, Magistrate Judge Carlson first considers the <u>Poulis</u> factors.[19]  (<u>Id.</u> at 21–22.)  Magistrate Judge Carlson finds that the following three <u>Poulis</u> factors weigh against CAA and the Boone Defendants (and in favor of the most severe sanctions): (1) CAA and the Boone Defendants' "discovery delays, denials, and belated disclosures are the individual responsibilities"; (2) the evidence reveals a "pattern of delinquencies [by CAA] which illustrate a history of dilatoriness"; and (3) the evidence "permits an inference that at least some of this misconduct was willful, and not merely inadvertent."  (Doc. No. 388 at 21–22.)  Magistrate Judge Carlson states that these

_____

[19]  As discussed <u>supra</u>, the <u>Poulis</u> factors are:

(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

<u>See</u> <u>Comdyne</u>, 908 F.2d at 1148 (quoting <u>Poulis</u>, 747 F.2d at 868 (emphasis omitted)).

three factors "make this a close case." (Id. at 22.)

Although CAA and the Boone Defendants argue that two of the remaining factors weigh in their favor (Doc. Nos 320–21)—insisting that there was no prejudice to Plaintiffs because Plaintiffs ultimately received the information and that Plaintiffs' claims fail on their merits as a matter of law—Magistrate Judge Carlson states that "at best, these two considerations simply caution against employing the most severe and disfavored of sanctions, entry of default judgments" (Doc. No. 388 at 23).  As to the merits, Magistrate Judge Carlson notes that CAA and the Boone Defendants "may not rely upon their assertion that the ultimate merits in this case clearly favor them to avoid any sanctions whatsoever" because "[i]t has been rejected by the district court which denied the defendants' summary judgment motions . . . ." See (id.) (citing Doc. No. 384 at 2).  As to CAA and the Boone Defendants' contention that Plaintiffs suffered no prejudice, Magistrate Judge Carlson rejects this contention as unavailing.  (Id. at 24.)  He notes that Plaintiffs have "suffered delays and burdensome litigation to secure this evidence.  These delays and costs as a matter of law constitute a cognizable form of prejudice which may warrant some sanctions."  (Id. at 25.)  Additionally, the Third Circuit "already observed that the delay in providing discovery in this case prejudiced Clarity in the related contractual arbitration by preventing Clarity from presenting evidence which would have potentially contradicted CAA's position in these arbitration proceedings."  See (id.) (citing France, 43 F.4th at 374–75). Magistrate Judge Carlson rejects CAA and the Boone Defendants' "no harm, no foul" argument because their disclosures were not simply belated and wholly voluntary, and were only made as "a function of the persistence of the [P]laintiffs and the tenacity of Judge Schwab."  (Id.)  As to the final Poulis factor—the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions—Magistrate Judge Carlson suggests that it would be

23

"inappropriate to take this case out of the hands of the jury as a discovery sanction" by granting default judgment against CAA and the Boone Defendants.  (Id. at 25–26.)

Instead, Magistrate Judge Carlson concludes that alternative sanctions are warranted, including costs and attorney's fees incurred by Plaintiffs.  (Id. at 26.)  In addition to costs and attorney's fees, Magistrate Judge Carlson recommends that the Court consider sanctioning CAA and the Boone Defendants by permitting Plaintiffs to present "evidence of [CAA and the Boone Defendants'] discovery defaults and delays at trial in support of a claim that this alleged concealment constitutes evidence of consciousness of guilt," and noting that other courts have allowed relevant evidence of discovery delays to be considered at trial.  (Id. at 26–27.) Magistrate Judge Carlson writes that "[p]resentation of evidence regarding discovery defaults is permitted under Rule 37(e)(1)."[20]  (Id. at 27.)  Therefore, Magistrate Judge Carlson concludes that, "taken in tandem," the imposition of costs and attorney's fees and the evidentiary sanction appropriately address the misconduct "without denying the parties full merits consideration of their claims and defenses."  (Id. at 27–28.)

### d.    Parties' Objections

Plaintiffs assert two objections the Report and Recommendation.  The first objection concerns CAA and the Boone Defendants.  Plaintiffs claim that "[w]hile the Magistrate Judge's recommendations are already very positive for Plaintiffs and should be adopted by this Court, Plaintiffs respectfully object to the Magistrate Judge's recommendation to not go further and impose dispositive default sanctions on CAA and the Boone Defendants."  (Doc. No. 396 at 3.) Plaintiffs argue that the Poulis factors "counsel toward striking [CAA and the Boone

---

[20]  While Magistrate Judge Carlson refers to Rule 37(e)(1) in discussing CAA and the Boone Defendants, the Court notes that Rule 37(c)(1) also provides for such an instruction.

Defendants' answers as the most appropriate sanction for their conduct." (Id. at 5.)  Plaintiffs

focus on the three Poulis factors that "caution[ed] against employing the most severe and

disfavored of sanctions, entry of default judgments." See (id. at 6) (citing Doc. No. 388 at 23).

Plaintiffs claim that the prejudice factor "should be reconsidered and should be found to weigh

toward the most severe sanctions" because Plaintiffs endured serious prejudice as a result of

CAA and the Boone Defendants' misconduct. (Id. at 7–8.)  As to the effectiveness of sanctions

other than dismissal, Plaintiffs agree with the recommendation to impose costs and attorney's

fees, but again claim that more serious sanctions are warranted. (Id. at 8–9.)  Further, as to the

sixth Poulis factor—the meritoriousness of the claim or defense—Plaintiffs maintain that this

factor is satisfied because Magistrate Judge Carlson found that Plaintiffs have brought a

meritorious case. (Id. at 10–12.)

   CAA objects to Magistrate Judge Carlson's recommendation that Plaintiffs be permitted

to argue that "CAA intentionally withheld 'smoking gun' evidence (Plaintiffs' words) and that

CAA did so because it knew it was 'guilty' of tortious interference." (Doc. No. 393 at 6.)  CAA

argues that, while Magistrate Judge Carlson emphasized the Third Circuit's preference for

resolving cases on the merits, Magistrate Judge Carlson's proposed sanction "would undoubtedly

taint the jury's view of CAA and distract from their ability to independently assess the

evidence." (Id.)  CAA also disagrees with Plaintiffs' characterization of the Expense Report and

email attachment as "smoking guns" and argue that the jury should be allowed to draw their own

conclusions about the importance of the two items. (Id. at 7.)  Further, CAA claims that "the

exercise of presenting this discovery saga will turn a portion of the trial into a sideshow that will

add hours if not days to the trial length." (Id.)

   More specifically, CAA claims that this proposed sanction is, in essence, a spoliation

instruction, and that such a sanction is unprecedented.  (Id. at 8.)  First, CAA asserts that the

cases cited by Magistrate Judge Carlson in support of the recommended sanction are

distinguishable from the instant matter because the cases cited concern permanent destruction of

evidence and are not binding here where "disclosures were merely 'tardy.'"  (Id. at 8–10.)

Second, CAA asserts that Plaintiffs have not met their threshold burden of demonstrating that,

pursuant to Rule 37(b), CAA violated a discovery order.  See (id. at 10) (citing Fed. R. Civ. P.

37(b)(2)(A)).  CAA cites to the transcript of the hearing before Magistrate Judge Schwab,

claiming that Plaintiffs conceded that CAA did not violate a discovery order and had instead

violated the general rules of discovery.  See (id.) (citing Doc. No. 355 at 60–62, Tr. 60:18–62:2).

CAA maintains that, as noted by Magistrate Judge Carlson, it ultimately complied with

Magistrate Judge Schwab's Orders.  See (id.) (citing Doc. No. 388 at 7, 25).  Third, CAA

remarks that it did not "actively" withhold information because the testimony does not support

the idea that CAA took primary responsibility for relevance calls or redaction decisions" and it is

possible that the email attachment was "stripped away unintentionally."  (Id. at 11–12 n.7.)

CAA notes that "[w]ith the benefit of hindsight, CAA can see that its prior counsel did not give

the discovery process in this case the attention it deserved."  (Id. at 12.)  CAA further states that,

"without condoning or excusing the conduct that led the parties to this juncture, CAA notes that

Judge Schwab repeatedly offered Plaintiffs the opportunity to re-open discovery and re-depose

witnesses, which Plaintiffs apparently declined."  (Id. at 13.)  CAA states that its position is

supported by Rule 37(e) which permits a spoliation instruction only where "information was

'lost'; where it 'cannot be restored or replaced through additional discovery'; and where the

court finds 'that the party acted with the intent to deprive another party of the information's use

in the litigation[.]'"  See (id. at 14) (citing Fed. R. Civ. P. 37(e)).  CAA concludes by stating that,

if sanctions are warranted, a monetary penalty is appropriate.  (Id. at 14–15.)

The Boone Defendants object to Magistrate Judge Carlson's Report and Recommendation that they be sanctioned by claiming that such sanctions are "unwarranted and unprecedented where, as here, no discovery order was violated, and no information was lost." (Doc. No. 412 at 5.)  Similar to CAA's objection, the Boone Defendants argue that Magistrate Judge Carlson's suggestion that Plaintiffs be permitted "to present evidence of the Boone Defendants' discovery defaults and delays at trial in support of a claim that this alleged concealment constitutes evidence of consciousness of guilt" constitutes a spoliation instruction. See (id. at 7) (citing Doc. No. 388 at 3, 11, 26, and 30).  The Boone Defendants note that "[s]poliation is a negative inference drawn from a party's destruction of relevant evidence, reflecting a 'consciousness of guilt.'"  See (id.) (citing Ward v. Lamanna, 334 F. App'x 487, 492 (3d Cir. 2009) (unpublished)).  Further, the Boone Defendants maintain that, because they never violated a discovery order of the Court, Rule 37(b) sanctions cannot be levied against them.  (Id. at 10.)  They claim that the dispute regarding the interrogatory responses was due to the advice of prior counsel and "[b]ecause Plaintiffs exceeded the maximum number of interrogatories, the Boone Defendants did not provide an answer to Interrogatory Number 8 in their first set of responses."[21]  (Id. at 12.)  On that basis, the Boone Defendants maintain that they did not violate

---

[21]  The two interrogatory responses are described by the Boone Defendants as follows:

> Interrogatory Number 2 asked the Boone Defendants to "[i]dentify each and every person with knowledge of the facts alleged in the Second Amended Complaint." (Doc. 70-3 at 6) . . . . . Plaintiffs claim that the Boone Defendants' failure to identify former CAA employee Jake Silver in response to this arguably overbroad interrogatory was intentional subterfuge to "hide" CAA's involvement in the [S]igning [E]vent. (Doc. 297 at 28).

> Interrogatory Number 8 asked the Boone Defendants whether they had had any

any discovery order and that when ordered by Magistrate Judge Schwab to respond, they "timely complied." (Id. at 13.)  Additionally, they claim that Plaintiffs conceded that there was only a "violation of the general rules of discovery," not a violation of a discovery order under Rule 37. (Id.)  The Boone Defendants then cite to Rule 37(e), stating that a spoliation instruction is permitted only where information was "lost"; where it "cannot be restored or replaced through additional discovery"; and where the court finds "that the party acted with the intent to deprive another party of the information's use in the litigation[.]"  See (id. at 14) (quoting Fed. R. Civ. P. 37(e)).  The Boone Defendants thus argue that there is no indication that they intended to withhold information or destroy information because they relied on their prior counsel's advice that they did not need to respond.  (Id. at 14–15.)  They claim that they did not alter or destroy evidence, the only prejudice suffered by Plaintiffs was a delay in the disclosure of Jake Silver's name, and Plaintiffs have not suffered a substantial unfairness.  (Id. at 15–18.)  Echoing CAA's objection, the Boone Defendants remark that the instant matter is distinguishable from cases cited by Magistrate Judge Carlson because no evidence was permanently lost as well as that the Third Circuit has a "strong policy" in favor of resolving cases on the merits.  (Id. at 18–19.)  The Boone Defendants assert that they should not be liable for fees and costs because they have not engaged in any sanctionable conduct.  (Id. at 19.)  Finally, the Boone Defendants request that the

---

communications with anyone at CAA. (Doc. 70-3 at 13). Although this interrogatory was designated number "8," it was actually the 34th question presented by Plaintiffs when counting the numerous subparts of the previous interrogatories. Prior counsel asserted an objection based on the number of interrogatories and offered to reach a written stipulation "as to a reasonable number of additional interrogatories[.]" (Doc. 70-3 at 12). Because Plaintiffs exceeded the maximum number of interrogatories, the Boone Defendants did not provide an answer to Interrogatory Number 8 in their first set of responses.

(Doc. No. 412 at 11–12.)

Court schedule argument on this issue or hold a de novo hearing.  (Id. at 20.)

### e.     Analysis

Upon independent review of the applicable law, the parties' objections, and the Report and Recommendation, the Court will overrule all three objections.  As an initial matter, the parties' objections address the imposition of sanctions under Rule 37(b), but the Court finds that the proper provisions are Rule 37(c), which governs the failure to disclose information, and Rule 37(e), which governs the failure to preserve information—neither of which requires the showing of a violation of a discovery order.  The Court adopts Magistrate Judge Carlson's recommendations that the Court decline to strike CAA and the Boone Defendants' answers, and permit Plaintiffs to offer evidence of CAA and the Boone Defendants' discovery defaults and delays at trial, and order CAA and the Boone Defendants to pay the costs and attorney's fees incurred by Plaintiffs.

As discussed supra, dismissals with prejudice or default judgments are drastic sanctions. See Poulis, 747 F.2d at 867, 869 (stating that these sanctions must be "sanction[s] of last, not first, resort").  In these circumstances, where the Court has denied Defendants' motions for summary judgment (Doc. No. 384) due to genuine disputes of material fact, default judgment would be inconsistent with the preference for resolving the case on the merits.  See Adams, 29 F.3d at 870, 878 (quoting Scarborough, 747 F.2d at 878) (stating that there is a strong preference for reaching a decision on the merits).  Therefore, the Court will decline to impose a default sanction.

However, this is not to say that Plaintiffs did not experience prejudice or that CAA and the Boone Defendants are blameless.  A party cannot claim "no harm, no foul" once the opposing party has belatedly produced documents.  See Tarlton v. Cumberland County Corr.

29

<u>Facility</u>, 192 F.R.D. 165, 170 (D.N.J. 2000).  Prejudice is not limited to "irremediable" or "irreparable" harm.  <u>See</u> <u>Adams</u>, 29 F.3d at 870.  Prejudice can also include "the burden imposed by a party's ability to prepare effective a full and complete trial strategy."  <u>See</u> <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 222 (3d Cir. 2003). "Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance." <u>Briscoe v. Klaus</u>, 538 F.3d 252, 260 (3d Cir. 2008); <u>see also</u> <u>Poulis</u>, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer interrogatories and the defendants had to file a motion to compel the plaintiffs' answers).  CAA and the Boone Defendants' withholding of information has prejudiced Plaintiffs by complicating and protracting this litigation, increasing costs, and delaying resolution.  CAA and the Boone Defendants' conduct is especially troublesome in light of the Third Circuit's order vacating the NFLPA arbitration award on a finding of fraud.  <u>See</u> <u>France,</u> 43 F.4th at 374–75.  Under the circumstances, any sanction less than the one proposed would be totally ineffective to address the egregious conduct at issue here.  and the delays that these discovery disputes have caused throughout the instant case.

Although the Court will not impose a default sanction, the Court will adopt the recommendation of Magistrate Judge Carlson to permit Plaintiffs to present evidence of CAA and the Boone Defendants' discovery defaults and delays at trial in support of a claim that this alleged concealment constitutes evidence of consciousness of guilt.  (Doc. No. 388 at 26.) Contrary to CAA and the Boone Defendants' arguments, this is not an adverse inference instruction that requires a showing of spoliation because the "[p]resentation of evidence regarding [discovery defaults] is permitted under Rule 37(e)(1) and distinguished from a

mandatory or permissive adverse inference instruction, for which Rule 37(e)(2) requires a finding of intent to deprive a party of the evidence." See (Doc. No. 388 at 27) (citing <u>Prelvukaj</u>, 2023 WL 3570659, at \*10). The Court has broad discretion in imposing sanctions and pursuant to Rule 37(e)(1), the Court will permit Plaintiffs to present evidence of CAA and the Boone Defendants' discovery defaults and delays at trial in support of a claim that this alleged concealment constitutes evidence of consciousness of guilt. See <u>Doubleline Cap. LP v. Odebrecht Fin. Ltd.</u>, No. 17-cv-04576, 2021 WL 1191527, at \*9 (S.D.N.Y. Mar. 30, 2021) (permitting the plaintiffs to present evidence and argument to the jury concerning defendants' discovery misconduct and permitting the jury to consider that evidence in making its decision).

CAA and the Boone Defendants have not presented any evidence that their failure to comply with their discovery obligations (by failing to disclose or admit) was substantially justified.[22] Therefore, the Court may order payment of Plaintiffs' reasonable expenses, including attorney's fees. See Fed. R. Civ. P. 37(b)(2)(C), (c)(1)(A).[23] As noted <u>supra</u>, Plaintiffs have

---

[22] As noted <u>supra</u>, this Court stated that:

> Substantial justification for the failure to make a required disclosure has been regarded as justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance.

See <u>Tolerico</u>, 205 F.R.D. at 175–76.

[23] In the Report and Recommendation, Magistrate Judge Carlson cites to Rule 37(b)(2)(C) as the legal basis for the payment of costs and attorney's fees by both CAA and the Boone Defendants. See (Doc. No. 388 at 26) (citing Fed. R. Civ. P. 37 (b)(2)(C) (stating that "the court must order the disobedient party, . . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust"). As discussed <u>supra</u>, Rule 37(b) applies to the violation of a discovery order. CAA and the Boone Defendants' misconduct was addressed by Magistrate Judge Schwab by way of orders on motions to compel (Doc. Nos. 74, 285), but their misconduct concerns the

"suffered delays and burdensome litigation to secure this evidence.  These delays and costs as a matter of law constitute a cognizable form of prejudice which may warrant some sanctions." (Doc. No. 388 at 25.)  In agreement with Magistrate Judge Carlson's recommendation, the Court will impose reasonable costs and attorney's fees on CAA for their failure to produce the flight information and email attachment in order to mask France's direct involvement in the Signing Event that affected the outcome of the NFLA arbitration.  See France, 43 F.4th at 374–75 (stating how the arbitrator was persuaded that France had nothing to do with the Signing Event and therefore denied Bernstein's grievance in the March 27, 2020 arbitration award).  The Court will also impose costs and attorney's fees on the Boone Defendants for their role in hiding CAA's involvement while the first NFLPA arbitration was still pending.[24]  This misconduct consists of Craig Boone's signature under oath on the initial response to interrogatories (Doc. No. 70-3 at 17) as well as the Boone Defendants and other Memorabilia Defendants' denial of paragraphs of Plaintiffs' Second Amended Complaint that alleged that they had worked with CAA to arrange the Signing Event (Doc. Nos. 40 ¶¶ 69, 70, 75–82, 85–86; 61 ¶¶ 69, 70, 75–82, 85–86).  The Court will decline the Boone Defendants' request for an evidentiary hearing on this issue.[25]  The Court finds an evidentiary hearing to be unnecessary because the parties had the

---

failure to disclose or supplement discovery as opposed to the violation of a discovery order.  See Fed. R. Civ. P. 37(c)(1)(A) (stating that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), . . . . the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure").  Therefore, CAA and the Boone Defendants' discovery misconduct warrants the imposition of costs and attorney's fees—just under a different provision of Rule 37.

[24]   The Court will impose costs and attorney's fees on CAA and the Boone Defendants, as opposed to their counsel.  See Grider, 580 F.3d at 141 (holding that "Rule 37(c)(1) does not permit sanctions against counsel")).

[25]   "'[A] district court in the sound exercise of its discretion must identify and determine the legal

opportunity to present evidence at the hearing before Magistrate Judge Schwab (Doc. No. 350)

and have extensively briefed both the motion and their objections to the Report and

Recommendation.[26]  Accordingly, the Court will overrule the parties' objections to the Report

and Recommendation as to CAA and the Boone Defendants.  The Court turns next to Plaintiffs'

claims against Redland/Ochs for sanctions under Rule 37(e).

### 2.   Redland/Ochs Defendants

#### a.   Applicable Legal Standard

As previously discussed, a district court may sanction a party that destroys electronically

stored information "with the intent to deprive another party of the information's use in the

litigation."  See Fed. R. Civ. P. 37(e)(2).  Rule 37(e), in full, provides:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored
> information that should have been preserved in the anticipation or conduct of
> litigation is lost because a party failed to take reasonable steps to preserve it, and
> it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information,

---

basis for each sanction charge sought to be imposed, and whether its further resolution requires
further proceedings, including the need for an evidentiary hearing.'"  Rogal v. Am. Broad. Cos.,
Inc., 74 F.3d 40, 44 (3d Cir. 1996) (quoting Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1359
(3d Cir.1990)).  "[A] court must provide the party to be sanctioned with notice of and some
opportunity to respond to the charges."  Jones, 899 F.2d at 1357 (citing Eash v. Riggins Trucking
inc., 757 F.2d 557, 570–71 (3d Cir. 1985)).  "[W]hile Rule 37 requires 'an opportunity to be
heard' by the potentially sanctionable party, see [Federal Rule of Civil Procedure] 37(c)(1), that
opportunity to be heard does not extend to the right to an evidentiary hearing in every case."
Gittin v. Gateway Clipper Inc., No. 16-cv-00757, 2021 WL 1232421, at *15 (W.D. Pa. Mar. 12,
2021) (Kane, J.) (citing Sun River Energy, Inc. v. Nelson, 800 F.3d 1219, 1230 (10th Cir.
2015) (stating that "[a]n opportunity to be heard does not require an oral or evidentiary hearing
on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process
requirements") (quotation omitted)).

[26] As discussed supra, Magistrate Judge Carlson provided the parties the opportunity to
supplement the record in his August 31, 2023 Order (Doc. No. 375) and the parties did not file
additional submissions with the Court (Doc. Nos. 376–77).

may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

> (A) presume that the lost information was unfavorable to the party;

> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or

> (C) dismiss the action or enter a default judgment.

See Fed. R. Civ. P. 37(e).  "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and the duty to preserve the evidence was reasonably foreseeable to the party."  Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012).  "When a determination that spoliation has occurred has been made, an appropriate sanction is for the court to provide the jury with an adverse inference instruction that the destroyed or altered evidence might or would have been unfavorable to the offending party."  Freeman v. Dep't of Corrs., No. 07-cv-02191, 2011 WL 94422, at * 1 (M.D. Pa. Jan. 11, 2011) (citing Ward, 334 F. App'x at 492) (unpublished) (stating that "[s]poliation is a negative inference drawn from a party's destruction of relevant evidence, reflecting a 'consciousness of guilt'")).  When considering the imposition of an adverse inference instruction sanction, courts should consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."  See In re Hechinger Inv. Co., 489 F.3d 568, 579 (3d Cir. 2007) (citing Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994)).  When there is no evidence that a party intentionally destroyed the evidentiary material which it knew would have

been beneficial to an adverse party, there is an insufficient basis to grant a spoliation motion.
See id.

### b.      Plaintiffs' Claims Against Redland/Ochs

As to Redland/Ochs, Plaintiffs argue that the Court should give an adverse inference
instruction against Redland/Ochs because Redland/Ochs failed to preserve and produce
responsive information when Ochs' smart phone "melted."  (Doc. No. 297 at 30.)  Plaintiffs
maintain Gerry Ochs had a duty to preserve discoverable evidence on his smart phone (text
messages with Craig Boone) once he was served with Plaintiffs' complaint on February 24,
2019.  (Id.)  However, Ochs testified in his deposition that his smart phone was destroyed when
it "melted" in a hot car at "the end of June, beginning of July of 2019," and all of the text
messages were lost.  See (id.) (citing Doc. No. 297-7 at 16–17, Tr. 51:3–54:5) (Gerry Ochs'
deposition transcript).  Plaintiffs assert that Ochs' conduct is a spoliation of evidence and thus
the Court should impose an adverse inference instruction.  (Id. at 31–34.)

### c.      Report and Recommendation

Magistrate Judge Carlson notes that Plaintiffs' request that the Court impose a spoliation
inference sanction against Redland/Ochs relating to the alleged loss and destruction of Ochs'
cellphone is governed by a separate and distinct legal benchmark.  (Doc. No. 388 at 16, 28.)
Even if a party had a duty to preserve evidence, the party seeking the spoliation inference must
also prove a culpable state of mind.  See (id. at 19, 28–29) (citing Bull, 665 F.3d at 79) (holding
that "a finding of bad faith is pivotal to a spoliation determination").

Here, Magistrate Judge Carlson finds that no spoliation sanction is warranted.  (Id. at 28.)
In order to apply a spoliation instruction, he notes that "it must appear that there has been an
actual suppression or withholding of the evidence."  (Id. at 28–29) (citing Bull, 665 F.3d at 79).

Magistrate Judge Carlson concludes that, although Ochs' cellphone was damaged after he left his cellphone in his car for a "prolonged period during the summer of 2019 and the phone suffered heat damage," Ochs appears to have made contemporaneous good faith efforts to repair and restore the phone, and Plaintiffs were able to secure some evidence through other sources.  (Id. at 29.)  Therefore, Magistrate Judge Carlson recommends denying Plaintiffs' request for a spoliation inference against Redland/Ochs.  (Id.)

**c.       Plaintiffs' Objection**

Plaintiffs' second objection relates to Magistrate Judge Carlson's recommendation to deny an adverse inference instruction against Redland/Ochs.  (Doc. No. 396 at 12–13.)  Plaintiffs claim that Ochs was under a duty to preserve his cellphone data because he was on notice that the text messages and other cellular data on the phone were responsive to discovery requests by Plaintiffs—thus warranting an adverse inference instruction for spoliation.  (Id.)

**d.       Analysis**

Upon independent review of the applicable law, Plaintiffs' objection, and the Report and Recommendation, the Court will overrule Plaintiffs' second objection.  The Court agrees with Magistrate Judge Carlson's finding that Ochs had an affirmative duty to preserve his cellphone data because Plaintiffs initiated proceedings against Redland/Ochs in February 2019 (Doc. No. 1) and the cellphone melted during the summer of 2019.  See Archer v. York City Sch. Dist., 227 F. Supp. 3d 361, 380 (M.D. Pa. 2016) (citing Kounelis v. Sherrer, 529 F. Supp. 2d 503, 518 (D.N.J. 2008)) (stating that "[a]n independent duty to preserve relevant evidence arises when the party in possession of the evidence knows that litigation by the party seeking the evidence in pending or probable").

36

However, as noted by Magistrate Judge Carlson, the analysis does not end there.  (Doc. No. 388 at 28–29.)  "An adverse inference may not be issued without evidence that records were intentionally concealed or destroyed."  <u>Shelton v. Gure</u>, No. 19-cv-00843, 2021 WL 2210989, at *5 (M.D. Pa. 2021) (citing <u>Harding v. CareerBuilder, LLC</u>, 168 F. App'x 535, 540 (3d Cir. 2006) (unpublished)); <u>see also</u> <u>Bull</u>, 665 F.3d at 79 (holding that "withholding requires intent"); 29 Am. Jur. 2d Evidence § 177 (stating that "such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent").  There is no evidence to indicate that Ochs intended for the texts to be destroyed and, as noted by Magistrate Judge Carlson, "it appears that Ochs made contemporaneous good faith efforts to repair and restore the cell phone but without success."[27] <u>See</u> (Doc. Nos. 388 at 29); <u>see also</u> <u>In re Hechinger</u>, 489 F.3d at 579 (holding that, when there was no evidence that documents were intentionally destroyed, the lower court had "little basis" for granting a spoliation motion).  Therefore, the Court will overrule Plaintiffs' second objection and adopt Magistrate Judge Carlson's recommendation.

### B.   Redland/Ochs' Motion to Bifurcate

Redland/Ochs filed a motion pursuant to Federal Rule of Civil Procedure Rule 42 for separate trial or separate jury ("motion to bifurcate").  (Doc. No. 408.)  As noted <u>supra</u>, Boone/MVP and Plaintiffs filed briefs in opposition to Redland/Ochs' motion.  (Doc. Nos. 419–20.)

---

[27]  In his deposition, Ochs testified that he left his phone in a box truck while on a job at a military establishment because he wasn't allowed to have his phone inside and that "it melted." He states that he took the phone to the AT&T store where he was told that he needed a new phone and "they couldn't recover anything in there," including his text messages.  (Doc. No. 297-7 at 16, Tr. 52:11–53:12.)

### 1.     Applicable Legal Standard

Federal Rule of Civil Procedure Rule 42(b) provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." See Fed. R. Civ. P. 42(b).  "The decision to bifurcate is a 'matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance.'"  Shamblin v. Chesapeake Energy Corp., No. 12-cv-00089, 2014 WL 1796687, at *1 (M.D. Pa. May 6, 2014) (quoting Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978)).  The "separation of issues for trial is not to be routinely ordered."  See Lis, 579 F.2d at 824.  The Court "must weigh the various considerations of convenience, prejudice to the parties, expedition and economy of resources." See Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22 (3d Cir. 1984).  The moving party bears the burden of establishing that bifurcation is appropriate.  See Shamblin, 2014 WL 1796687, at *1.  "'[B]ifurcation is appropriate where litigation of one issue . . . may eliminate the need to litigate a second issue.'  But a district court is not compelled to bifurcate where the 'issues are so closely interwoven that the plaintiff would have to present the same evidence twice in separate trials.'"  Cleveland Bros. Equip. Co. v. Vorobey, No. 19-cv-01708, 2020 WL 3432642, at *1 (M.D. Pa. June 23, 2020) (quoting In re Bayside Prison Litig., 157 F. App'x 545, 547–58 (3d Cir. 2005) (unpublished)) (emphasis and footnotes omitted).

### 2.     Arguments of the Parties

Redland/Ochs assert that, if the Court adopts the Report and Recommendation regarding sanctions, the Court should grant them a separate trial due to the possibility of prejudice based on the misconduct of CAA and the Boone Defendants.  (Doc. No. 409 at 12–13.)  Alternatively, Redland/Ochs argue that the Court should "hold a single trial with separate juries, such that the

'consciousness of guilt' evidence is not heard by the jury empaneled to render a verdict upon the

Plaintiffs' claims against Gerry Ochs and Redland Sports."  (Doc. No. 409 at 10, 19.)

In their brief in opposition, Plaintiffs maintain that there is no basis for Redland/Ochs'

motion, stating that:

> the recommended sanction does not allow Plaintiffs to present any evidence about
> the Redland Defendants' actions in discovery at all. There is little or no risk that
> discussion of how CAA and Boone abused the discovery process will affect the
> jury's evaluation of the Redland Defendants' actions. Even if there was such risk,
> an instruction on the matter would ensure no unfair prejudice. And, of course,
> granting separate trials would consume a tremendous amount of the court's
> resources and other resources of the parties and witnesses that is not warranted
> whatsoever in this civil case with just two causes of action, both for tortious
> interference.

(Doc. No. 418 at 2.)

CAA and Boone/MVP filed a joint brief in opposition to the motion as well.  (Doc. No.

419.)  They assert that the Court should deny Redland/Ochs' motion because Federal Rule of

Civil Procedure 42(b) and cases in the Third Circuit do not provide for a separate trial for

different parties on the same claims.  (Id. at 4–5.)  CAA and Boone/MVP posit that "[b]ecause

all Defendants are alleged to be joint tortfeasors, and [j]oint and several liability is premised

upon causation and the indivisibility of the harm caused, it would be improper to try Plaintiffs'

claims against Redland and Ochs separately."  See (id.) (internal quotations omitted).  Even

assuming that Rule 42(b) applied here, they state that the "equities" do not favor granting

Redland/Ochs a separate trial because Redland/Ochs have not demonstrated prejudice.  (Id. at 6–

7.)  CAA and Boone/MVP note that a separate trial would undermine the "expeditious resolution

of this case and be a waste of this Court's resources."  (Id. at 8.)  As to Redland/Ochs' alternative

request of a separate jury, CAA and Boone/MVP assert that Redland/Ochs cite no authority

supporting the use of a separate jury and ask that the Court deny Redland/Ochs' request.  (Id. at

10.)

### 3.    Analysis

Upon consideration of the arguments of the parties and the applicable law, subject to its discretion, the Court finds that bifurcation of claims against Defendants "would neither be convenient to the parties and the Court, nor would such a procedure expedite and economize the trial.  Rather, such a process would greatly complicate, confuse, and, in all likelihood, unduly delay resolution of this matter."  See Botey v. Green, 12-cv-01520, 2017 WL 11679726, at *1 (M.D. Pa. June 8, 2017).  Defendants are "sufficiently intertwined" and it would be difficult to separate them because certain witnesses would potentially need to be called multiple times.  See id. (stating that issues are "sufficiently intertwined" when "it would be difficult to clearly separate these issues, raising a strong possibility of renewed objections during trial as to the content of certain witnesses' testimony and potentially requiring certain witnesses to be called multiple times"); see also Yohn v. Selective Ins. Co., No. 20-cv-00565, 2020 WL 6343138, at *2 (M.D. Pa. Oct. 29, 2020) (denying a motion to bifurcate claims since there was "likely to be substantial overlap with respect to the documents used and witnesses called" and this "significant factual overlap cautions against bifurcation of claims").  The Court also finds that separate trials would neither "promote judicial economy nor the convenience to the parties."  See Fuentes v. USAA Gen. Indem. Co., No. 19-cv-01111, 2021 WL 8017101, at *2 (M.D. Pa. Mar. 30, 2021).  Any concerns regarding possible prejudice from the sanction instruction can be addressed using jury instructions.  See Corrigan v. Methodist Hosp., 160 F.R.D. 55, 58 (E.D. Pa. 1995) (stating that final instructions to the jury can be supplemented with "cautionary instructions at the outset of any relevant evidence to the fact that certain evidence is to be used on certain claims only").

As to Redland/Ochs' alternative request for a separate jury, the Court will deny the

request because "[t]he use of dual juries seems to have very little precedent in this Circuit—we have found only one example of it, which was not challenged on appeal," and that was a criminal proceeding.  See United States v. Brown, 849 F.3d 87, 91 (3d Cir. 2017) (citing United States v. Cruz, 187 F.3d 627 (3d Cir. 1999)).  Therefore, the Court will deny Redland/Ochs' motion to bifurcate.

## IV.  CONCLUSION

For the foregoing reasons, the Court will adopt Magistrate Judge Carlson's Report and Recommendation as to Plaintiffs' motion for sanctions, overrule the parties' objections, and deny Redland/Ochs' motion to bifurcate.  The Court will reserve ruling on Plaintiffs' request for reasonable costs and attorney's fees until after the conclusion of trial.  An appropriate Order follows.